**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

| | | |
|---|---|---|
| SARA SHEA "SALLY" DAVIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:17-CV-00773 |
| METRO PARKS AND RECREATION | ) | |
| DEPARTMENT, and the | ) | Judge Marvin E. Aspen |
| METROPOLITAN GOVERNMENT OF | ) | |
| NASHVILLE AND DAVIDSON | ) | |
| COUNTY, TENNESSEE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Marvin E. Aspen, District Judge:

Plaintiff Sara Shea "Sally" Davis ("Plaintiff") alleges that her employer, Metro Parks and Recreation Department and the Metropolitan Government of Nashville and Davison County, Tennessee (together, "Defendants"), retaliated against her for having complained of sex discrimination. Plaintiff contends that that violates Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act. 42 U.S.C. § 2000 *et seq.*; Tenn. Code Ann. 4-21-311, *et seq.* Presently before us is Defendants' motion for summary judgment and its related filings. (*See, e.g.*, Dkt. Nos. 40–41.) For the reasons stated below, Defendants' motion for summary judgment is granted and the case is terminated in its entirety.

## BACKGROUND

Unless otherwise stated, the facts described herein are undisputed and culled from the parties' Local Rule 56.01 submissions. (Dkt. Nos. 42, 46, 50.) In summary, this lawsuit is about a long-term employee who claims she was retaliated against after she first complained of sex-

based discrimination on June 27, 2013. (Defs.' Resp. SOF (Dkt. No. 50) ¶ 2.) That internal complaint claimed discrimination concerning the hiring of the "Assistant Director of Community Services"[1] and for "Assistant Director of Special Services."[2] (*Id.*) We review the facts chronologically following that internal complaint.

The next day, Plaintiff claims that she was denied access to review her own personnel file because she had not first made an appointment, even though she had never previously been denied such access without an appointment. (*Id.* ¶ 3; Pl.'s Disc. Docs. (Dkt. No. 47–1) at 22.)[3]

Plaintiff testified at her deposition that she then met with Human Resources about the complaint. (Pl.'s Dep. (Dkt. No. 40–1) at 40–41.) Around the same time, Plaintiff's supervisor,

---

[1] The record sometimes refers to this role as "Special Project Manager of Community Recreation." (*Compare* Compl. (Dkt. No. 1) ¶ 14 *with* Dkt. No. 50 ¶ 2.) We treat them as the same and use these terms interchangeably throughout this opinion.

[2] Plaintiff takes issue with the fact that these two positions were advertised as open to applications jointly. (*See, e.g.*, Pl.'s Resp. SOF (Dkt. No. 47) ¶ 3.) Questions about the application process are immaterial to Plaintiff's two retaliation counts because she does not allege that the hiring decision itself was retaliatory, nor does she even allege a count for discrimination under Title VII.

[3] The parties dispute whether on this day Director Lynch told Plaintiff that she might not last in the department for the remaining year and four months before she could retire, and told her that if she did not like things at the department, she needed to hire a lawyer and file a lawsuit. (Defs.' Resp. SOF (Dkt. No. 50) ¶ 11.) Plaintiff claims that that fact is supported by Lynch's own deposition testimony. (*Id.*) But Plaintiff failed to file the relevant page of that transcript. (*Id.* (citing Lynch Dep. at 75).) Only excerpts of that deposition have been made part of the record, none of which include the purported testimony. (*See, e.g.*, Lynch Dep. Excerpt 1 (Dkt. Nos. 40–4) at 4–5 (transcript pages 69 and 77); Lynch Dep. Excerpt 2 (Dkt. No. 47–8) at 15–16 (transcript pages 62 and 85).) Therefore, Plaintiff failed to place the relevant testimonial evidence on the record. Plaintiff also cites her own unsworn notes purportedly made in July 2015 to support this fact, but those notes do not mention a Summer 2013 interaction with Director Lynch. (Pl.'s Disc. Docs. (Dkt. No. 47–1) at 27–28.) Regardless, we decline to consider the notes' statement that Director Lynch stated that he was going to fire her for the truth of the matter asserted therein under the rule against hearsay because those notes were not made while under oath. Fed. R. Evid. 801; *see also* Fed. R. Civ. P. 56(c)(4) (setting the requirements of an affidavit or declaration). Thus, regarding this fact, Plaintiff does not meet Rule 56's requirement that a party asserting a fact cite to a particular part of the record in support of its existence. Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials.")

2

Director Lynch, spoke about it with Plaintiff's peers and questioned her "loyalty" for having

filed such a complaint. (*Id.* ¶ 17.) Director Lynch limited his interactions with Plaintiff following

her internal complaint of discrimination. (Defs.' Resp. SOF ¶ 7.) For example, Director Lynch

removed her from his "open door" policy. (*Id.*; Davis Dep. (Dkt. No. 47–6) at 52–53; Lynch

Dep. (Dkt. No. 40–4) at 69.) According to Plaintiff's testimony, that meant she thereafter had to

ask his assistant located just outside his office if he were available before she could meet with

him. (Davis Dep. at 53.) As for another example, after filing her complaint, other individuals,

like Director Lynch's assistant, would sit in on the biweekly meetings between Director Lynch

and Plaintiff. (Pl.'s Resp. SOF ¶ 5.)

In October 2013, four months after her internal complaint, Plaintiff received a work

evaluation. (Defs.' Resp. SOF ¶ 8; Defs. MSJ Ex. 5 (Dkt. No. 40–5) at 6.) Director Lynch

presented that evaluation and its scores were the lowest possible. (Defs.' Resp. SOF ¶ 8.)

Plaintiff had never received such poor scores before she filed the internal complaint. (*Id.*) After

Plaintiff responded to the evaluation, Director Lynch changed those scores with favorable ones.

(Defs.' MSJ Ex. 5 (Dkt. No. 40–5) at 4–6.) The revised score was a 3.31 out of four. (Pl.'s Resp.

SOF ¶ 6.) Fourteen months later (six months after Plaintiff started the Community Recreation

role), Plaintiff received a 3.35 out of four evaluation score. (*Id.* ¶ 7.)

Plaintiff's personnel file contains two written reprimands: one from June 17, 2014 and

another from January 2015. (Pl.'s Resp. SOF ¶ 8.) The June 2014 reprimand was issued because

Plaintiff missed a work meeting. (June 2014 Reprimand (Dkt. No. 40–7) at 1.) That reprimand

was an email from Director Lynch that stated:

> You missed the leadership team meeting yesterday. I want to
> document to you that this is not acceptable. When you failed to
> attend the Park Board meeting this spring you were the first division
> head in my memory to have done so and I failed to counsel you at

3

that time. I cannot allow this to become a habit. Put meetings in your schedule and discipline yourself to be in attendance on time from this point forward.

(*Id.*) The January 2015 reprimand involved missing a work deadline. (Defs.' Resp. SOF ¶ 9; Pl.'s Disc. Docs. at 15.) That reprimand was also sent from Director Lynch, it stated:

It is disappointing when another Department is working with our Department to adjust a job description for a position we request and not only do we fail to meet the deadline to provide information, we fail to respond to the proper job classification discussed in the meeting with Human Resources. In the meeting with Jason Lusk it was discussed to utilize most of the job description from "Recreation Center Supervisor" and make minor adjustments to it. The deadline was set and on Monday of this week after failing to meet the agreed upon deadline, you submitted something referencing the "Recreation Leader" job description. This has caused confusion from both our Department's standpoint as well as theirs. I received your e-mail providing an excuse for Sherry Hipps not meeting the deadline, but had the assignment been handled properly by you, the excuse provided would not have entered into the situation.

Consider this as a written reprimand on both issues.

Furthermore, I understand there is a deadline of Monday to follow up on this project. I do not wish to call you in on Monday, a day you requested off, so make every effort to have the deadline met and submitted in time. I have directed both Pam Crenshaw and Jason Lusk to proceed on adjustments to the Recreation Center Supervisor job description as discussed in the meeting last week.

(January 2015 Reprimand (Dkt. No. 40–8) at 1.) When Plaintiff met with Director Lynch to discuss the latter reprimand, he spoke to her like she was a child and dismissed her with a wave of his hand. (Defs.' Resp. SOF ¶ 13.)

Plaintiff claims that Director Lynch did not reprimand other employees for poor work performance. For example, in September 2016, Director Lynch had instructed the assistant directors to prepare for a meeting then two showed unprepared (while Plaintiff was prepared), yet those two did not receive a reprimand. (Defs.' Resp. SOF ¶ 18.) But Director Lynch's testimony suggests that he had reprimanded other assistant directors. (Lynch Dep. at 7–16).

4

Director Lynch testified that he gave a written reprimand to assistant directors Mr. Netsch and

Mr. Hester. (*Id.* at 8.)  For example, Director Lynch testified that he gave Mr. Netsch a written

reprimand for trying to construct a building with no air-conditioning. (*Id.* at 8–10.)  He also

reprimanded Mr. Netsch for abruptly closing a road's gate from public vehicles. (*Id.* at 10–11.)

And Mr. Hester was given a written reprimanded for improperly cutting trees on a historic

property, along with Mr. Taylor who received an oral reprimand for the same conduct (*Id.* at 11–

13.)

In July 2015, Director Lynch gave Plaintiff another evaluation. (Defs.' Resp. SOF ¶ 10.)

That evaluation rated Plaintiff a 2.88, a score between a 2 (acceptable) and a 3 (commendable).

(Crenshaw Decl. ¶ 4(c).)  The parties dispute whether the following emphasized sentence within

Lynch's evaluation constitutes a false statement:

> Sally has done a credible job in Recreation but *her relationship with*
> *peers in the department and her supervisor continues to deteriorate.*
> She has been reprimanded within the past year: and yet seems to
> think she is entitled to not respond to her supervisor in certain
> situations."

(Pl.'s Resp. SOF (Dkt. No. 47) ¶ 9 (citing Pl.'s Dep. at 49–50) (emphasis added).)

In January 2016, Director Lynch requested pay increases for all his assistant directors,

including Plaintiff. (Pl.'s Resp SOF ¶ 11.)

About three years after the discrimination complaint's filing and just under 300 days

before Plaintiff made an EEOC complaint, on April 28, 2016,  Director Lynch emailed Plaintiff

to inform her that she would be the first division head to report to Monique Odom, who was

formerly Plaintiff's peer. (Pl.'s Disc. Docs. at 19; Pl.'s Resp. SOF ¶ 19.)  That email explained

that the reason for the move was motivated by an "emotional cloud that interferes with a truly

productive supervisor/subordinate relationship" between Director Lynch and Plaintiff. (*Id.*)

In September 2016, Director Lynch sent an email to Plaintiff that, as she characterizes it, "wrongfully reprimanded" her over a minor issue. (Pl.'s Surreply (Dkt. No. 53) at 4.)[4] There, Director emailed the following to Plaintiff, with a copy to Ms. Odom:

> Below is an e-mail I sent last week with detailed instructions. I had received assurances from Monique [Odom] on Tuesday that the two of you discussed the situation and Monique had your attention and your loyalty. That is not the case. As of this morning in a conversation with Jackie I found out you had ignored both my e-mail and Monique's reminder. This is totally unacceptable for a division head to ignore the Director of the Department's instructions. The next incident of any failure on your part to follow my instructions or any failure on your part to fulfill my written instructions will be considered a willful act of insubordination and will be dealt with accordingly.

(Pl.'s Disc. Docs. at 13.)

Then on January 3, 2017, Plaintiff's longtime assistant, Robert Benson, was transferred without first consulting with Plaintiff. (*Id.* ¶ 16.) Ms. Odom, who was then the deputy director and was the director at the time she was deposed, testified to the reason for this reassignment. (Odom Dep. (Dkt. No. 40–13) at 23.) She testified that she supported the move and Director Lynch moved him because Ms. Odom had intended to do so once she took over directorship, so Director Lynch did it before his upcoming retirement. (*Id.*)

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Under Rule 56, the movant bears the initial burden of

---

[4] This fact is not listed in either of the parties' Rule 56.01 statement of facts. (*See generally* Dkt. Nos. 42, 46, 47, 50.)

"informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48, 106 S. Ct. at 2510. In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2). We view the record in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor. *See Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513.

## ANALYSIS

Defendants seek summary judgment against Plaintiff's lawsuit in its entirety. Defendants contend that summary judgment in their favor is warranted because: (1) the applicable statute of limitations bars her claims; (2) there was no adverse employment action; (3) there was no causation between her protected activity and the allegedly retaliatory conduct; and (4) to the extent that Plaintiff advances a retaliation claim by way of a hostile work environment theory, Plaintiff failed to show that Director Lynch's conduct was both extreme and causally related to her protected activity. For the following reasons, Defendants' motion for summary judgment is granted and the case is terminated in its entirety.

7

## I.      Timeliness

We first address the applicable time bar under Title VII and the Tennessee Human Rights Act ("THRA").  For Title VII purposes, an individual must file a charge within 42 U.S.C. § 2000e–5(e)(1)'s statutory time period and serve notice upon the person against whom the charge is made within a certain time period from the scrutinized employment practice. 42 U.S.C. § 2000e–5(e)(1); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S. Ct. 2061, 2070 (2002) (citing *Alexander v. Gardner–Denver Co*., 415 U.S. 36, 47, 94 S. Ct. 1011 (1974)). "A claim is time barred if it is not filed within these time limits." *Morgan*, 536 U.S. at 109, 94 S. Ct. at 2070.  Here, the applicable time period for the Title VII claim is three hundred days before January 25, 2017, when Plaintiff filed her EEOC charge.[5]  That means the allegedly unlawful retaliatory employment practice(s) must have occurred after March 31, 2016 to be timely.  For the THRA claim, the claim must be filed within one year after the alleged unlawful practice. Tenn. Code Ann. § 4-21-311(d).  For THRA purposes, that applicable time period would thus be January 25, 2016, one year before Plaintiff filed her EEOC charge.

Defendants contend that the statutory word 'occurred' applies to discrete discriminatory

---

[5] Under § 2000e–5(e)(1), "A charge under this section shall be filed within *one hundred and eighty days* after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within *three hundred days* after the alleged unlawful employment practice occurred, or within *thirty days* after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency." *Id.* (emphasis added).  300 days is the applicable timeframe here because Plaintiff filed charges with an agency (EEOC) with authority to grant or seek relief from the aggrieved practice. (*Id.*)

8

acts. (Defs.' Mem. (Dkt. No. 41) at 12.)   Plaintiff responds that her lawsuit involves a series of

continuing retaliatory and harassing incidents, creating a continuing violation. (Pl.'s Mem. (Dkt.

No. 48) at 9–11.)   Under the continuing violations theory, the component acts that fall outside

the statutory time period can be considered as part of the claim at-large, provided that an act

contributing to the claim occurs within the filing period. *See Morgan*, 536 U.S. at 117, 122 S. Ct.

at 2074.   Specifically, *Morgan* reversed the Ninth Circuit's application of the continuing-

violations theory to what it called "serial violations":

> Discrete acts such as termination, failure to promote, denial of
> transfer, or refusal to hire are easy to identify. Each incident of
> discrimination and each retaliatory adverse employment decision
> constitutes a separate actionable unlawful employment practice.
> [The plaintiff] can only file a charge to cover discrete acts that
> occurred within the appropriate time period. While [the plaintiff]
> alleged that he suffered from numerous discriminatory and
> retaliatory acts from the date that he was hired through March 3,
> 1995, the date that he was fired, only incidents that took place within
> the timely filing period are actionable.

*Morgan*, 536 U.S. at 114, 122 S. Ct. at 2072 (internal quotations omitted).   While *Morgan*

delineated the scope of the continuing violations theory and the circumstances that it applies, the

Court held that the "a Title VII plaintiff raising claims of discrete discriminatory or retaliatory

acts must file his charge within the appropriate time period." *Id.*   And as the Sixth Circuit

recognized, the Supreme Court "largely curtailed the continuing-violations theory when applied

to 'discrete discriminatory acts.'" *Austion v. City of Clarksville*, 244 Fed. Appx. 639, 647 (6th

Cir. 2007) (citing Morgan, 536 U.S. at 113, 122 S. Ct. at 2072); *see also Rouse v. Fanning*, No.

3:14-CV-01761, 2016 WL 6611306, at *9 (M.D. Tenn. Nov. 9, 2016).[6]

---

[6] The Sixth Circuit recognizes "that the continuing-violations theory still applies to discrete
discriminatory acts that are part of a longstanding and demonstrable policy of discrimination."
*Austion v. City of Clarksville*, 244 Fed. Appx. 639, 647 (6th Cir. 2007) (internal citation
omitted); *see also Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003) ("The second category
of continuing violations, involving a longstanding and demonstrable policy of discrimination, is

Plaintiff points us towards *Green v. Brennan*, – U.S. – (2016), 136 S. Ct. 1769, 1778 (2016). *Green*'s plaintiff sued his former employer under Title VII for constructive discharge related to race-based discrimination and retaliation. *Green*, 136 S. Ct. at 1769. The Court reasoned that the discriminatory and retaliatory conduct leading to discharge were all part of the "matter alleged to be [unlawful]" and so they were "part of the same, single claim under consideration." *Id.* at 1778. So *Green* held that a plaintiff's resignation constituted part of the "complete and present cause of action." *Green*, 136 S. Ct. at 1776.

We apply *Green*'s standard yet find that the occurrences that took place within the 300-day period are discrete from one another, as well as those incidents that occurred outside of the time period. The occurrences that took place within the 300-day period are: (1) Director Lynch transferred Plaintiff's assistant (Benson) in January 2017; (2) Plaintiff was placed under the supervision of her peer, Ms. Odom in April 2016; and (3) Plaintiff was unofficially reprimanded on September 16, 2016. (Defs.' Resp. SOF ¶¶ 16, 18; Pl.'s Disc. Docs. at 19.) And the events that happened outside of the 300-day period are: (1) removing Plaintiff from Director Lynch's open door policy, (2) having her subordinates/peers sit in on biweekly meetings, (3) Director Lynch's talking-down-to Plaintiff, (4) Director Lynch having threatened her job, (5) Ms. Odom's promotion and oversight over Plaintiff, (6) negative evaluations, (7) two written reprimands, and (8) Director Lynch ceasing 1-on-1 communications with Plaintiff. For one, no evidence in the record suggests, for example, that these incidents were part of a continued effort to retaliate against her, or that she was subjected to repeated, severe, and pervasive behavior. At best, they are a multitude of separate purportedly retaliatory occurrences rather than part of the complete

---

not implicated by *Morgan*."); *Rouse v. Fanning*, No. 3:14-CV-01761, 2016 WL 6611306, at *9 (M.D. Tenn. Nov. 9, 2016).

and present cause of action.

Thus, we find that these were all discrete occurrences such that Plaintiff cannot rely on a continuing violations theory to extend the limitations period. *See Morgan*, 536 U.S. at 105 ("We hold that the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period."). Plaintiff's retaliation claims based on the occurrences outside the 300-day window (Title VII) and 1-year (THRA) are time barred. 42 U.S.C. § 2000e–5(e)(1); Tenn. Code Ann. § 4-21-311(d).[7]

## II. Retaliation under Title VII and the Tennessee Human Rights Act

To prevail on a retaliation claim under Title VII and the THRA, a plaintiff must demonstrate (1) that she engaged in a protected activity like complaining of sex-based discrimination; (2) that the defendant knew she exercised a protected right; (3) that the defendant then took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) a causal connection between the protected activity and the adverse employment action. *See, e.g.*, *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009). "Retaliation claims under the . . . THRA are analyzed similarly to Title VII cases." *Gill v. Rinker Materials Corp.*, No. 3:02-CV-13, 2003 WL 749911, at *2 (E.D. Tenn. Feb. 24, 2003) (citing *Bruce v. Western Auto Supply Co.*, 669 S.W.2d 95, 97 (Tenn. App. 1984) (other citations omitted)). We address each of these elements in turn, with respect to each of the three discrete occurrences within the limitations period.

---

[7] A similar result was reached by Judge Todd J. Campbell in *Rouse*, 2016 WL 6611306, at *9. There, the following events were held as discrete occurrences: "the failure to promote in November or December 2010, other failures to promote during the first half of 2011, and the going-away luncheon where negative comments were made in June 2011." *Id.* The facts at play here are like *Rouse*, and far from the standard laid out in *Green*. *Green*, 136 S. Ct. at 1778; *Rouse*, 2016 WL 6611306, at *9.

11

First, there is no dispute that Plaintiff engaged in a protected activity: complaining of sex-based discrimination to her employer's human resources department and to the EEOC. (Defs.' Resp. SOF (Dkt. No. 50) ¶¶ 2, 17.)  Second, there is no a question of fact that Defendants knew about Plaintiff's complaint because she filed it with human resources, leading Director Lynch to respond and "question her loyalty." (*Id.* ¶ 17.)

The third element asks us to assess whether Defendants took an adverse employment action against Plaintiff or otherwise subjected her to severe or pervasive retaliatory harassment. *Barrett*, 556 F.3d at 516.  Title VII's retaliation provision contains both a materiality requirement and an objective standard. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006).  These additional requirements exist because Title VII does not exist to immunize an employee from petty slights or minor annoyances that often take place at work. *Id.* Rather, the materiality and objective standards serve to prohibit employer actions that are likely "to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Id.* (internal quotation and citation omitted).

Applying this standard to the facts of this case, we address only the purportedly adverse employment actions and their respective causal connections to protected activity (elements three and four) that survive the time bar discussed above: (1) Director Lynch transferred Plaintiff's assistant (Benson) in January 2017; (2) Plaintiff was placed under the supervision of her peer, Ms. Odom in April 2016; and (3) Plaintiff was unofficially reprimanded on September 16, 2016. (Defs.' Resp. SOF ¶¶ 16–18; Pl.'s Disc. Docs. at 29.)

## A.    Plaintiff's Assistant's Reassignment

We first scrutinize whether Director Lynch's transfer of Plaintiff's assistant, Robert Benson, constituted an adverse employment action.

In defense of this action not constituting an adverse employment action, Defendants contend generally that the reassignment of personnel is a routine decision by a superior that would not dissuade a reasonable person from making a complaint of discrimination. (Defs.' Reply (Dkt. No. 49) at 4.) And although Defendants state that Plaintiff "cites no authority for the proposition that the transfer of someone else (without any claimed reduction in pay or status for that person) could be seen as a materially adverse," Defendants also fail to cite a case. (Defs.' Reply at 4.)  We think that a reasonable jury could find under the right set of facts that a supervisor's reassignment of a subordinate-Plaintiff's long-term assistant could constitute an adverse employment action.  We reason that the fear of having one's loyal assistant being reassigned might dissuade someone from filing a discrimination complaint.  *See Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013) (holding that a key inquiry in determining an adverse employment action is whether an act could dissuade an employee from engaging in a protected activity).

Although we hold that a reasonable jury could find that Plaintiff's assistant's reassignment was an adverse employment action, we fail to see any question of material fact exists regarding the fourth element: whether there was a causal connection between the protected activity and that reassignment.  Indeed, there is none.  First, the fact that Ms. Odom, who was four months away from taking over directorship from Lynch at the time of the reassignment, had planned to reassign Assistant Benson. (Odom Dep. (Dkt. No. 40–13) at 23.)  So, Director Lynch's decision to do just that in advance of Ms. Odom's directorship breaks the causal chain.

13

(*See id.*)  The only facts in the record to support Plaintiff's causation theory is that Assistant

Benson testified that his transfer "made no sense . . . after I had worked with Plaintiff for 14

years." (Benson Decl. (Dkt. No. 47–3) ¶ 4.)  And his opinion for Director Lynch's retaliatory

tendencies: "he had told me himself some years before that he remembers when people have

done things he considers to have wronged him; for example, Mr. Lynch once told me that a

colleague in the department, Frank Wright, who had made him angry, would <u>never</u> get a

promotion – and to this day . . . [he] has not been given any promotions." (*Id.* ¶ 6.)  Mr. Benson's

most persuasive testimony is his statement that Mr. Holmes, the assistant director who got the

promotion over Plaintiff, stated to him that he could be the next victim of Mr. Lynch's vendetta

against Plaintiff. (*Id.* ¶ 20.)[8]  This testimony alone is not enough to create a question of material

fact regarding causality.  First, this statement was purportedly made by Mr. Holmes, not Mr.

Lynch, and we do not know Mr. Holmes' basis for such a statement.  A reasonable person could

not find that this suggests that Director Lynch reassigned Assistant Benson because Plaintiff

complained of discrimination three to four years earlier.  We thus grant Defendants' motion

because there is no factual basis for causation between Assistant Benson's reassignment and

Plaintiff's complaint of sex discrimination.

---

[8] We overrule Defendants' hearsay objection to these preceding statements and find them non-hearsay under Fed. R. Ev. 801(d)(2)(A).  Under that rule, a statement is not hearsay if it is offered against an opposing party and was made by the party's agent or employee on a matter within the scope of that relationship and while it existed. *Id.*  Those requirements plainly apply here: it is offered against Defendants and it is a statement made by Defendants' employee (Holmes), and it implies the possibility that Mr. Lynch (Defendants' employee) had a vendetta against Plaintiff.  These statements are offered to prove the fact that Assistant Benson believed that he was reassigned away from Plaintiff because Director Lynch had a retaliatory mindset. This is an admissible purpose.

### B. Ms. Odom Supervises Plaintiff

We next address Director Lynch's appointment of Ms. Odom (Plaintiff's former peer) to Deputy Director. We need only address the causality element because Defendants admit that this occurrence "could possibly be construed as [a] materially adverse employment action." (Defs.' Mem. (Dkt. No. 41) at 14.) Plaintiff's theorizes that Director Lynch's decision to suddenly place Plaintiff under Ms. Odom's supervision was retaliatory because they shared the same job classification level at the time, and so it was tantamount to a demotion and done to single Plaintiff out as the only employee at her level placed as a subordinate to Ms. Odom. (Compl. ¶¶ 78–79; Pl.'s Resp. at 10). Defendants' argue there is no causation because: (1) lack of a temporal proximity and (2) no other evidence supporting a causal link.

The Sixth Circuit has found that a 2.5-year gap between the protected activity and the adverse employment action too remote for an inference of temporal proximity. *See Kean v. IT–Works, Inc.*, 466 F. App'x 468, 471 (6th Cir. 2012). Here, Plaintiff fails to respond to this point with respect to Ms. Odom's sudden supervision. We find Plaintiff's oversight significant. Under Fed. R. Civ. P. 56(e)(2), a party responding to a summary judgment motion may not simply rest upon its allegations. Fed. R. Civ. P. 56(e)(2). Instead, the nonmovant must present specific facts to show that a genuine issue of material fact exists. *Id.* Plaintiff has not presented any fact to explain away the undisputed three year lapse between the discrimination complaint's filing and Ms. Odom's promotion to supervise Plaintiff. (Pl.'s Disc. Docs. at 19; Pl.'s Resp at 12–13; Pl.'s Surreply (Dkt. No. 53) at 1–5.) Plaintiff thus fails to meet her Fed. R. Civ. P. 56(e)(2) obligations. We therefore find no genuine dispute that this three-year gap voids the causal link between Plaintiff's complaint and Ms. Odom's supervision given no other cited fact rebuts this argument. We thus grant summary judgment in Defendants favor and hold that Ms.

15

Odom's supervision of Plaintiff was not a retaliatory act as a matter of law.

### C.   The September 2016 Stern Email

The last occurrence surviving the limitations period is Director Lynch's September 2016

email to Plaintiff. (Pl.'s Disc. Docs. at 13.)  Without any explanation, Plaintiff claims Director

Lynch "wrongfully reprimanded" her in that email.  There, Director emailed the following to

Plaintiff, with a copy to Ms. Odom:

> Below is an e-mail I sent last week with detailed instructions.  I had
> received assurances from Monique [Odoms] on Tuesday that the
> two of you discussed the situation and Monique had your attention
> and your loyalty.  That is not the case.  As of this morning in a
> conversation with Jackie I found out you had ignored both my e-
> mail and Monique's reminder.  This is totally unacceptable for a
> division head to ignore the Director of the Department's
> instructions.  The next incident of any failure on your part to follow
> my instructions or any failure on your part to fulfill my written
> instructions will be considered a willful act of insubordination and
> will be dealt with accordingly.

(Pl.'s Disc. Docs. at 13.)

We jointly address whether this email constitutes an adverse employment action and

causation between her complaint and this email. This email is analogous to emails that the Sixth

Circuit scrutinized in *Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013).  *Taylor* is an

employment retaliation case that involved two reprimands that "warned that further incidents of

this nature could lead to disciplinary action." *Id.*  That Court held that "Although certain written

reprimands could rise to the level of an adverse employment action," the applicable reprimands

"would not have dissuaded a reasonable worker from making a claim of discrimination." *Id.*

*Taylor* based its reasoning in part on the fact that the record lacked evidence that disciplinary

action resulted from these letters. *Id.* (citing *Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 Fed.

App'x. 561, 566 (6th Cir. 2012) ("A written reprimand, without evidence that it led to a

materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a

materially adverse employment action.").  We follow *Taylor* and *Creggett*. *Id.*  Here, nothing in the record suggests that the September 2016 email led to disciplinary action, nor was it related to a pattern of reprimands.  And with respect to the causality element, nothing in this email or its surrounding context suggests that it was sent due to a retaliatory motive.  Rather, the email and its context simply demonstrates that it was sent because Plaintiff ignored her supervisors' instructions and to forewarn against further insubordination.  We thus hold that Plaintiff's case regarding the discrete occurrence of the September 2016 stern email lacks two elements: adverse employment action and causality.  And so we grant Defendants' motion for summary judgment with respect to the discrete occurrence of a stern email.

### D.    Hostile Work Environment

Plaintiff's second count, retaliation under the THRA, passingly states that "The Plaintiff endured retaliation in the form of a hostile work environment and harassment." (Compl. ¶ 2.) We construe this to mean that Plaintiff intends to prove element three[9] of her THRA retaliation claim by way of hostile work environment, or alternatively stated by way of "severe or pervasive retaliatory harassment." *Barrett*, 556 F.3d at 516.

Plaintiff analogizes her situation to that of the plaintiff in *Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014).  We find that case distinguishable from Plaintiff's.  There, the plaintiff was effectively denied training opportunities that impacted his job performance, was frequently reprimanded harsher than his colleagues, and was subjected to a bad faith investigation. *Id.* at 731–33.

---

[9] The third element can be proven by either an adverse employment action or by having subjected Plaintiff to severe or pervasive retaliatory harassment. *Barrett*, 556 F.3d at 516.

Here, Plaintiff's evaluations fell in the realm of satisfactory. And for the one instance where Plaintiff received a low score, Director Lynch revised his evaluation to a satisfactory score in recognition of Plaintiff's feedback. (*See, e.g.*, Pl.'s Resp. SOF ¶¶ 5–7.) Additionally, despite Plaintiff's two reprimands and other negative feedback, she maintained employment until retirement and even had her salary increased. (*Id.* ¶¶ 20–23.) Nor would any reasonable person would find that Director Lynch's other conduct described herein like removing her from his open-door policy and including other employees in on their meetings constituted severe or pervasive retaliatory harassment because she was still able to meet productively with him. At worst, the record suggests that Plaintiff had a poor relationship with a condescending supervisor. (Defs.' Resp. SOF ¶ 13.) That is not a violation of the law. *See, e.g., Henry v. Fed. Reserve Bank of Atl.*, 609 F. App'x 842, 844–45 (6th Cir. 2015) (holding that Title VII "does not set forth a 'general civility code,' and it does not protect employees from the 'ordinary tribulations' accompanying run-of-the-mine,' . . . social interactions) (internal citation omitted). Thus, we grant Defendants' motion for summary judgment with respect to Plaintiff's Hostile Workplace theory for retaliation.

## CONCLUSION

Even viewing the summary judgment record in the light most favorable to Plaintiff, we conclude that no reasonable person could find in her favor. For the reasons stated above, we grant Defendants' motion for summary judgment (Dkt. No. 40), and this case is terminated in its entirety. The Clerk is directed to enter final judgment accordingly. It is so ordered.

Dated: April 20, 2020
     Chicago, Illinois
                                      Marvin E. Aspen
                                      United States District Judge

18