# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| SARA SHEA "SALLY" DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:17-CV-00773 |
| v. | ) | |
| | ) | Judge Marvin E. Aspen |
| METROPOLITAN GOVERNMENT OF | ) | |
| NASHVILLE AND DAVIDSON COUNTY, | ) | |
| TENNESSEE,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

In April 2020, we granted summary judgment to Defendant Metropolitan Government of Nashville and Davidson County, Tennessee on Plaintiff Sara Shea "Sally" Davis's claims against it. *Davis v. Metro Parks & Recreation Dep't* (*Davis I*), No. 3:17-CV-00773, 2020 WL 1915247, at *1 (M.D. Tenn. Apr. 20, 2020). The Sixth Circuit affirmed our decision in large part, but it reversed our decision to grant summary judgment on Plaintiff's retaliatory harassment claim and remanded the case. *Davis v. Metro Parks & Recreation Dep't* (*Davis II*), 854 F. App'x 707, 719 (6th Cir. 2021). Defendant now renews its motion for summary judgment on this claim. (Metropolitan Government of Nashville and Davidson County's Renewed Motion for Summary Judgment (Dkt. No. 86).)[2] For the following reasons, we deny Defendant's motion.

---

[1] Plaintiff's Complaint also named "Metro Parks and Recreation Department" as a defendant (Dkt. No. 1 ¶ 7), and previous opinions in this case refer to this entity as a defendant. But Plaintiff voluntarily dismissed the Metro Parks and Recreation Department from this case shortly after she filed the Complaint. (Dkt. No. 14.) We therefore refer to the Metropolitan Government as the sole Defendant in this case.

[2] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

# FACTUAL BACKGROUND

We take the relevant factual background largely from our previous opinion in *Davis I* and the Sixth Circuit's opinion in *Davis II*. To avoid cluttering the factual background with quotation marks and brackets, we have generally refrained from using such notations when relying upon these opinions for background facts. Where necessary, we have also set forth additional undisputed facts based on the record, including the parties' Local Rule 56.01 submissions on remand and the materials cited therein. (*See* Metropolitan Government of Nashville and Davidson County's Statement of Undisputed Material Facts in Support of Its Renewed Motion for Summary Judgment ("Def.'s SOF") (Dkt. No. 88); Plaintiff's Response to Defendant's Statement of Facts ("Pl.'s Resp. to Def.'s SOF") (Dkt. No. 96-1);[3] Plaintiff's Statement of Additonal [sic] Facts ("Pl.'s SOAF") (Dkt. No. 96-2);[4] Defendant's Response to Plaintiff's Statement of Additional Facts ("Def.'s Resp. to Pl.'s SOAF") (Dkt. No. 102).)

---

[3] Many of Plaintiff's responses to Defendant's statements of fact deny facts that are unquestionably not in dispute or make assertions that do not address the fact proposed by Defendant. As one example, Plaintiff denies that her bi-weekly meetings with Tommy Lynch were transitioned to Monique Odom in April 2016 (Pl.'s Resp. to Def.'s SOF ¶ 12) even though she proposes this fact herself (Pl.'s SOAF ¶ 48). There also is no dispute that Plaintiff "accepted the position of Special Programs Manager – Community Recreation" as Defendant proposes in its first statement of fact. (Def.'s SOF ¶ 1; Pl.'s Resp. to Def.'s SOF ¶ 1 ("Ms. Davis accepted the Programs Manager – Community Recreation position in that she performed the duties and held the title[.]")); *Davis II*, 854 F. App'x at 708 ("Plaintiff ultimately received the Community Programs position[.]"). Yet Plaintiff still disputes this proposed fact in part and proceeds to assert—in eight paragraphs spanning two pages—several facts that do nothing to dispute the fact. (Pl.'s Resp. to Def.'s SOF ¶ 1.) Such responses do not help us ascertain "whether there are any material facts in dispute." *See* LR 56.01(b); *Lewis v. Calvert*, No. 3:17-cv-000019, 2019 WL 295089, at *1 n.1 (M.D. Tenn. Jan. 23, 2019).

[4] Defendant contends that we should disregard Plaintiff's additional statements of fact "in their entirety given the amount of misrepresentations and mischaracterizations of actual record evidence contained therein." (Defendant Metropolitan Government's Reply Brief in Support of Renewed Motion for Summary Judgment ("Reply") (Dkt. No. 101) at 4–5.) Although we decline to do so, we have not relied upon any facts proposed by either party unless the fact is supported by the cited evidence or the party's opponent has admitted that the fact is undisputed.

2

From October 1978 to July 2017, Plaintiff was an employee at one of Defendant's departments, the Metro Parks and Recreation Department (the "Parks Department"). (Dkt. No. 18 ¶ 7); *Davis II*, 854 F. App'x at 707. During her tenure at the Parks Department, Plaintiff worked in the Community Recreation Division and the Revenue Producing Division. *Davis II*, 854 F. App'x at 707. Plaintiff had no disputes at her workplace until 2011, when the Parks Department hired Tommy Lynch to be its director. *Id.* at 707–08. According to Plaintiff, Lynch created a "good ole' boys atmosphere," which he formalized in 2013 by merging the application process for two Assistant Director positions in Special Services and Community Programs. *Id.* at 708 (citation omitted).

Plaintiff applied for the position of Assistant Director for Special Services, which was one level above her then-position as Superintendent of Golf. *Id.* After panel interviews for both assistant director positions (Special Services and Community Programs), the hiring committee ranked Plaintiff as number "1" in the process. *Id.* But long-time male employee John Holmes received the Special Services position, while Plaintiff received the Community Programs position. *Id.* In Plaintiff's view, her experience in the Revenue division made her the most qualified candidate for the Special Services position. *Id.* Believing that she had been a victim of gender discrimination, Plaintiff filed a complaint about the promotional process with Defendant's HR department on June 27, 2013. *Id.*; *Davis I*, 2020 WL 1915247, at *1; (Pl.'s Resp. to Def.'s SOF ¶ 2.)

Plaintiff asserts that she began experiencing retaliation the following day, when Lynch's assistant refused to allow Plaintiff to access her own personnel file, to which Plaintiff previously had easy access. *Davis II*, 854 F. App'x at 708. Immediately thereafter, Lynch threatened Plaintiff's job, informing her that she might not last in the department for the remaining year and

four months until her eligible retirement date.  *Id.*  Soon after that, Lynch's "open door" policy to speak with him, which he granted to everyone in the Parks Department, no longer applied to Plaintiff.  *Id.*  Around the same time, Lynch made sure someone else always sat in on his bi-weekly meetings with Plaintiff.  *Id.*  Lynch also spoke with Plaintiff's peers about her complaint and questioned Plaintiff's "loyalty" for accusing him of gender discrimination.  *Id.*; (Def.'s Resp. to Pl.'s SOAF ¶ 19.)

In July 2013, Lynch informed Plaintiff that her gender discrimination complaint had been turned over to HR to be investigated.  (Dkt. No. 47-1 at 8.)  A month later, Plaintiff met with two HR employees to discuss how to stop the retaliation and harassment Lynch was directing at her. (Def.'s Resp. to Pl.'s SOAF ¶¶ 25, 26.)  At the meeting, Plaintiff explained that she was working in a hostile environment; in response, the HR employees said that they would stop the retaliation and harassment against Plaintiff.  (*Id.* ¶ 27.)

In October 2013, Lynch evaluated Plaintiff's work performance.  *Davis I*, 2020 WL 1915247, at *2.  The scores Plaintiff received were the lowest possible on the evaluation form. *Davis II*, 854 F. App'x at 708.  They also were the lowest scores Plaintiff had ever received in her career.  *Id.*  Plaintiff believed the evaluation was illegitimate and returned it to Lynch.  *Id.* Lynch then amended the evaluation to include higher scores, with the revised score being a 3.31 out of 4.  *Id.*; *Davis I*, 2020 WL 1915247, at *2.  Lynch evaluated Plaintiff again at the end of 2013.  (Dkt. No. 40-6 at 4–5.)  Plaintiff's average score in this evaluation was 3.35 out of 4.  (*Id.* at 5; Pl.'s Resp. to Def.'s SOF ¶ 7.)

In June 2014, Lynch issued a written reprimand via email to Plaintiff for missing a work meeting.  *Davis II*, 854 F. App'x at 708–09.  Approximately six months later, Lynch issued another written reprimand via email to Plaintiff, this time for missing a work deadline.  *Id.* at

709.  Following this second reprimand, Plaintiff spoke with Lynch about the email, and she claims that he spoke to her like a child and dismissed her with a wave of his hand.  *Id.*  For his part, Lynch admitted to "being irate" and raising his voice at Plaintiff and other employees at times.  *Id.*  Plaintiff further contends that Lynch did not reprimand other assistant directors for similar conduct, but Lynch claims that he verbally reprimanded other employees for being unprepared at meetings.  *Id.*  In addition, Lynch testified that he had issued written reprimands to other employees for unrelated issues.  *Id.*

In July 2015, Lynch completed another work evaluation for Plaintiff.  *Id.*  He gave Plaintiff's performance a 2.88 rating on a scale where two was considered acceptable and three was considered commendable.  *Id.*  In his rationale for the score, Lynch wrote:

> Sally has done a credible job in Recreation but her relationship with peers in the department and her supervisor continues to deteriorate. She has been reprimanded within the past year: and yet seems to think she is entitled to not respond to her supervisor in certain situations.

*Id.* (citation omitted).  Plaintiff, however, disputes that her relationships with peers had deteriorated.  *Id.* at 710.  A few days after Lynch's evaluation, Plaintiff requested another meeting with HR to discuss her complaints regarding Lynch.  (Dkt. No. 40-9 at 6–7; Def.'s Resp. to Pl.'s SOAF ¶ 37.)

In February 2016, Lynch appointed Monique Odom as Deputy Director of the Parks Department.  (Pl.'s Resp. to Def.'s SOF ¶ 11; Def.'s Resp. to Pl.'s SOAF ¶ 40.)  As the Deputy Director, Odom held an equivalent rank and a functionally similar position in the department as the assistant directors, including Plaintiff.  *Davis II*, 854 F. App'x at 710, 715; (Def.'s Resp. to Pl.'s SOAF ¶ 41.)

In April 2016, Lynch informed Plaintiff that she would now be reporting to Odom, who would then report to Lynch. *Davis II*, 854 F. App'x at 710; (Def.'s Resp. to Pl.'s SOAF ¶ 43.) Around the same time, Lynch stopped speaking to Plaintiff except at group meetings, and Plaintiff began having bi-weekly meetings with Odom instead of Lynch. *Davis II*, 854 F. App'x at 710; (Def.'s Resp. to Pl.'s SOAF ¶ 48.) Plaintiff was the first assistant director supervised by Odom, but Odom eventually supervised all the assistant directors within the Parks Department. *Davis II*, 854 F. App'x at 715. Plaintiff expressed to Odom many times her concern about the pattern of retaliation, harassment, and hostile work environment she felt she was being forced to endure, including the fact that she had to report to Odom. (Def.'s Resp. to Pl.'s SOAF ¶ 52.)

In September 2016, Lynch issued a written reprimand to Plaintiff for ignoring his instructions. *Davis II*, 854 F. App'x at 710, 716. In early January 2017, Lynch transferred Plaintiff's assistant of 14 years, Robert Benson, to another division without consulting or notifying Plaintiff beforehand. *Id.* at 710; (Def.'s Resp. to Pl.'s SOAF ¶ 55.) Neither Plaintiff nor Benson was provided with an explanation for the move, but Odom said she supported the move and had planned to move Benson once Lynch retired and she became director of the department. *Davis II*, 854 F. App'x at 710–11. Later that month, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC), arguing that she had been subjected to harassment and intimidation after filing a sex discrimination complaint with HR. *Id.* at 711. A little more than five months later, on July 2, 2017, Plaintiff voluntarily retired. *Id.*

**PROCEDURAL HISTORY**

Plaintiff initiated this lawsuit in April 2017, alleging retaliation under Title VII of the Civil Rights Act and the Tennessee Human Rights Act ("THRA"). *Id.* Defendant subsequently moved for summary judgment on all of Plaintiff's claims. *Davis I*, 2020 WL 1915247, at *4. We ruled that Plaintiff's retaliation claims based on discrete acts that occurred before March 31,

2016, were time-barred, and that each of the three discrete acts that occurred after March 31, 2016—the April 2016 placement of Plaintiff under Odom's supervision, Lynch's September 2016 written reprimand, and the January 2017 transfer of Plaintiff's assistant—were not retaliatory. *Id.* at \*4–8. We also construed Plaintiff's retaliation claim under the THRA as including an assertion of retaliation based on a hostile work environment but found that the conduct at issue did not constitute "severe or pervasive retaliatory harassment." *See id.* at \*9. We therefore granted Defendant's summary judgment motion and terminated the case. *Id.*

Plaintiff appealed. *Davis II*, 854 F. App'x at 707. The Sixth Circuit affirmed our decision to grant summary judgment on Plaintiff's claims that were based on Defendant's discrete acts. *Id.* at 711–17. But the Sixth Circuit reversed our decision to grant summary judgment on Plaintiff's claim that was based on a hostile workplace theory, which it characterized as a retaliatory harassment claim. *Id.* at 717–19. In considering this claim, we erred in two respects. *Id.* at 718–19. First, we did not look "beyond the terms and conditions of [Plaintiff's] employment," which is required because "Title VII's anti-retaliation provision does not limit its purview to only employment-related conduct." *Id.* at 718 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 2414 (2006)). Second, we failed to "assess whether a jury could find the cumulative actions of [Plaintiff's] employer could 'dissuad[e] a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N.*, 548 U.S. at 68, 126 S. Ct. at 2415). The Sixth Circuit remanded the case so we could apply the correct standard to Plaintiff's retaliatory harassment claim and "determine whether the conduct of Plaintiff's employer, in a cumulative assessment, would have dissuaded a reasonable employee from making a charge of discrimination." *Id.* at 719.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must initially "inform[] the district court of the basis for its motion" and "identify[] those parts of the record that demonstrate the absence of any genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009). Once the movant carries its initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Moldowan*, 578 F.3d at 374. There is a genuine dispute about a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). When evaluating a motion for summary judgment, we view the evidentiary record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1093 (6th Cir. 2019).

## ANALYSIS

The only claim at issue on remand is Plaintiff's retaliatory harassment claim. *See Davis II*, 854 F. App'x at 719. This claim, which is based on a hostile workplace theory, arises under Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a). *See id.* at 717; *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1207 (11th Cir. 2021) (explaining that a "retaliatory-hostile-environment claim" is a type of retaliation claim under § 2000e-3(a)). Because Plaintiff does not argue that she has direct evidence of retaliation (*see generally* Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Opp'n") (Dkt. No. 96)), she must make out a *prima facie* case of retaliation using the *McDonnell Douglas* framework. *Davis II*, 854 F. App'x at 713–14. A *prima facie* case is established under *McDonnell Douglas* if "four

factors are met: 1) Plaintiff was engaged in a protected activity; 2) the exercise of protected rights was known to the employer; 3) the employer took an adverse employment action against Plaintiff; and 4) there was a causal connection between the adverse employment action and the protected activity." *Id.* A plaintiff's burden "at the prima facie stage is minimal and easily met." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 419 (6th Cir. 2021) (quotation marks omitted).

As it did on appeal, Defendant concedes that the first two *McDonnell Douglas* factors are satisfied because Plaintiff's June 2013 gender discrimination complaint constitutes a protected activity about which it knew. (Metropolitan Government of Nashville and Davidson County's Memorandum of Law in Support of Summary Judgment ("Mem.") (Dkt. No. 87) at 13); *Davis II*, 854 F. App'x at 714–15. But Defendant argues that the third and fourth *McDonnell Douglas* factors are not met because Plaintiff has not shown a harassing environment that is causally related to her June 2013 gender discrimination complaint. (*E.g.*, Mem. at 2–3, 13.) We therefore proceed to address whether Defendant has shown that summary judgment is appropriate based on (1) a lack of an adverse employment action, or (2) a lack of casual connection between any adverse employment action and Plaintiff's June 2013 gender discrimination complaint.

## I.  *McDonnell Douglas* Factor Three – Adverse Employment Action

An adverse employment action in the retaliation context is conduct that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[5]  *Davis II*, 854 F. App'x at 718 (quoting *Burlington N.*, 548 U.S. at 68, 126 S. Ct. at 2415); *Wyatt*, 999

---

[5] Although we refer to an adverse *employment* action, "the 'adverse employment action' requirement in the retaliation context is not limited to an employer's actions that solely affect the terms, conditions or status of employment, or only those acts that occur at the workplace." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345 (6th Cir. 2008). Rather, an adverse employment action "includes *any* conduct that would have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Wyatt*, 999 F.3d at 419 (emphasis added) (quotation marks omitted).

F.3d at 419.  "How a reasonable worker reacts is an 'objective standard.'"  *Davis II*, 854 F. App'x at 714 (quoting *Burlington N.*, 548 U.S. at 68–69, 126 S. Ct. at 2415).

For Plaintiff's retaliatory harassment claim, the alleged adverse employment action is a hostile work environment.  *See id.* at 717.  To determine whether Plaintiff was subjected to a hostile work environment, we must assess "the cumulative effect" of Defendant's actions "as if they 'constitute one unlawful employment practice.'"  *Id.* at 718–19 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 117, 122 S. Ct. 2061, 2073–74 (2002)).  We consider more than just "employment-related conduct" because "[a] charge under 42 U.S.C. § 2000e-3(a) 'extends beyond workplace-related or employment related retaliatory acts and harm.'"  *Id.* at 717–18 (quoting *Burlington N.*, 548 U.S. at 67, 126 S. Ct. at 2414).  We evaluate all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* at 718 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 371 (1993)).  We also look to whether Defendant's conduct "included 'repeated abusive discriminatory comments or treatment.'"  *Id.* (quoting *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015)).

A.      **Relevant Actions to Consider**

We first must determine which actions to consider in evaluating whether Plaintiff can establish that Defendant's conduct might have dissuaded a reasonable worker from making a charge of discrimination.  Under Title VII, Plaintiff had to file her EEOC charge "within 300 days 'after the alleged employment practice occurred.'"  *Id.* at 712 (quoting 42 U.S.C. § 2000e-5(e)(1)).  Plaintiff filed her EEOC charge on January 25, 2017, so any act that occurred before March 31, 2016, falls outside this 300-day window.  *Id.*  But because a hostile work environment "cannot be said to occur on any particular day," we may consider actions that took place before

10

March 31, 2016, if those acts "are *sufficiently related* to those incidents occurring within the statutory period as to form one continuous hostile work environment." *Id.* at 718 (quoting *Morgan*, 536 U.S. at 115, 122 S. Ct. at 2073); *Wheaton v. N. Oakland Med. Ctr.*, 130 F. App'x 773, 787 (6th Cir. 2005) (emphasis in original). For acts that fall outside the 300-day period, Plaintiff must "show that a 'reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee would believe that the conduct complained of was unlawful.'" *Davis II*, 854 F. App'x at 718 (quoting *Yazdian*, 793 F.3d at 646). So "long as at least one act contributing to the hostile-work-environment claim occurred within the filing period, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 820 (6th Cir. 2013) (quoting *Morgan,* 536 U.S. at 117, 122 S. Ct. at 2074).

The parties identify actions that occurred from June 2013 through January 2017 as being relevant to determining whether Defendant's conduct might have dissuaded a reasonable worker from pursuing a discrimination charge. (*See, e.g.*, Mem. at 16–17; Opp'n at 20–22.) Plaintiff contends that our analysis should consider actions that occurred both before and after March 31, 2016. (Opp'n at 20–22.) In its opening brief, Defendant contends that we should *not* consider three actions that occurred after March 31, 2016—Odom's supervision of Plaintiff starting in April 2016, Lynch's September 2016 written reprimand, and the January 2017 transfer of Benson, Plaintiff's assistant—because these actions have "been conclusively determined too [sic] not be retaliatory." (Mem. at 17.) Defendant then directly contradicts this contention by arguing in its reply that we should consider these actions *only* because these are the only actions that occurred on or after March 31, 2016. (Reply at 2–3.)

11

Defendant's attempts to limit the universe of actions we consider are not persuasive. We start with the position Defendant takes in its opening brief—that we should disregard Odom's April 2016 supervision of Plaintiff, the September 2016 written reprimand, and the January 2017 transfer of Benson, Plaintiff's assistant, because *Davis II* already determined that these actions were not retaliatory. (Mem. at 17.) This position misreads the Sixth Circuit's opinion. In *Davis II*, the Sixth Circuit addressed whether each of these actions constituted a *discrete* adverse employment action that was caused by Plaintiff's June 2013 discrimination complaint. *See Davis II*, 854 F. App'x at 714–17. In doing so, the Sixth Circuit did not address the question facing us on remand: whether the *cumulative* effect of Defendant's actions, including these three actions, "would have dissuaded a reasonable employee from making a charge of discrimination." *See id.* at 718–19. Moreover, the Sixth Circuit found that summary judgment was warranted for Plaintiff's claims based on Odom's supervision and Benson's transfer because there was no causation, not because these actions were not sufficiently adverse. *Id.* at 715–17. To the contrary, the Sixth Circuit indicated that both Odom's supervision and Benson's transfer might have dissuaded a reasonable worker from pursuing a charge of discrimination. *Id.* at 715, 717. And although the Sixth Circuit found that the September 2016 reprimand was not a "materially adverse employment action," *id.* at 716, that finding does not preclude us from considering whether this action contributed to a broader, actionable hostile work environment. *See Henry v. Abbott Laboratories*, 651 F. App'x 494, 504 (6th Cir. 2016) ("[E]ven where one employment action may not rise to the level of an adverse action, multiple incidents taken together might dissuade a reasonable worker from making or supporting a discrimination charge." (quotation marks omitted)). Accordingly, we will consider Defendant's post-March 31, 2016 actions.

12

But that is not to say that we should consider only these actions, as Defendant argues in its reply. Defendant waived this argument by raising it for the first time in its reply. *Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 567 (6th Cir. 2016); *Lofgren v. Polaris Indus. Inc.*, No. 3:16-cv-02811, 2021 WL 2580047, at *12 (M.D. Tenn. June 23, 2021). And even if Defendant had not waived this argument, it would not be convincing. Defendant argues that we should not consider pre-March 31, 2016 acts because the Sixth Circuit, by stating that a court "*may* review" acts that occurred outside the statutory time period, *see Davis II*, 854 F. App'x at 718 (emphasis added), did not *require* us to review such acts. (Reply at 2 n.2.) Defendant is splitting hairs; despite the Sixth Circuit's use of the permissive "may," it clearly intended for us to review these acts. Otherwise, we cannot evaluate all the circumstances and the "cumulative effect" of Defendant's actions, as we are required to do. *See Davis II*, 854 F. App'x at 718–19.

Ultimately, we can consider all acts predating March 31, 2016, as part of the alleged hostile work environment if those acts "are *sufficiently related* to those incidents occurring within the statutory period as to form one continuous hostile work environment" and "a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee would believe that the conduct complained of was unlawful." *Id.* at 718 (quotation marks omitted); *Wheaton*, 130 F. App'x at 787. Furthermore, the existence of an extended period of time where few (or no) hostile acts take place does not prevent actions occurring before and after that time period from being part of the same hostile work environment. *See Morgan*, 536 U.S. at 118, 122 S. Ct. at 2075 (indicating that a lengthy gap between hostile acts does not prevent the acts from "constitut[ing] one 'unlawful employment practice' . . . so long as each act is part of the whole").

Lynch committed acts outside the statutory period that purportedly contributed to a hostile work environment, such as threatening Plaintiff's job, no longer extending his open-door policy to Plaintiff, and questioning Plaintiff's loyalty in front of her peers. He also committed acts within the statutory period that purportedly contributed to a hostile work environment, such as assigning Odom to supervise Plaintiff and transferring Plaintiff's long-time assistant. Defendant does not argue that the actions that took place outside the statutory period are unrelated to the actions that took place within the statutory period such that they cannot collectively create one continuous hostile work environment. (*See generally* Mem.; Reply.) And although Defendant contends for the first time in its reply brief that Plaintiff fails to show that a reasonable person in her factual circumstances would not believe that the pre-March 31, 2016 actions were unlawful (Reply at 2–3), it was Defendant's burden to argue that there was a lack of disputed facts or evidence on this point in its opening brief. *See Moldowan*, 578 F.3d at 374 (the party moving for summary judgment bears the initial burden of demonstrating "the absence of any genuine issue of material fact" or showing "an absence of evidence to support the nonmoving party's case" (quotation marks omitted)); *Singh v. Vanderbilt Univ. Med. Ctr.*, No. 3:17-cv-00400, 2020 WL 243711, at *14 (M.D. Tenn. Jan. 16, 2020) (where the defendant-movant fails to initially show the absence of genuine issues of material fact on summary judgment, "the burden never shifts to the plaintiff to adduce any proof"); *see also Baker Hughes*, 836 F.3d at 567 (argument raised only in a reply brief is waived). Waiting until its reply brief to raise the issue does not meet this burden. *Singh*, 2020 WL 243711, at *14–15 (refusing to allow the defendants "a second chance to meet their initial burden" on summary judgment based on an argument raised for the first time in their reply); *Ebie v. City of Pataskala Div. of Police*, No. 2:16-cv-283, 2018 WL 3057722, at *8 (S.D. Ohio June 20, 2018) (argument made by the

defendant for the first time in its reply did not satisfy its initial burden on summary judgment).
Accordingly, we consider the cumulative effect of *all* of Defendant's actions—those taking place
before and after March 31, 2016.

### B. Cumulative Effect of Defendant's Actions

We must next determine whether Defendant has shown that, as a matter of law, the
cumulative effect of its actions did not subject Plaintiff to a hostile work environment. We
conclude that Defendant has not made this showing for two reasons.

First, Defendant argues in its opening brief only that its pre-March 31, 2016 actions failed
to create a hostile work environment. (Mem. at 16–17.) But the proper inquiry is whether the
cumulative effect of Defendant's pre- *and* post-March 31, 2016 actions created a hostile work
environment. By not attempting to show in its opening brief that summary judgment is
appropriate based on a consideration of all the relevant evidence, Defendant did not meet its
initial burden on summary judgment. *See Moldowan*, 578 F.3d at 374; *cf. Dugandzic v. Nike,
Inc.*, 807 F. App'x 971, 976 (11th Cir. 2020) (reversing grant of summary judgment because "the
district court did not consider all the relevant evidence and the totality of the circumstances in
deciding whether [the plaintiff] could make a *prima facie* case of harassment").

Second, a reasonable jury could find that the workplace environment Plaintiff
encountered after she filed her gender discrimination complaint "would have dissuaded a
reasonable employee from making a charge of discrimination." *Davis II*, 854 F. App'x at 719.
In the Sixth Circuit, what might dissuade a reasonable employee from making a charge of
discrimination is a "relatively low bar." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584,
595–96 (6th Cir. 2007); *see also Henry*, 651 F. App'x at 504 (characterizing this standard as "not
onerous"). For instance, this standard may be satisfied by transferring a long-time assistant
without explanation, *Davis II*, 854 F. App'x at 710–11, 717, placing an employee under the

supervision of a peer, *id.* at 715, placing an employee on paid administrative leave for a few days, *Michael*, 496 F.3d at 591, 596, or suggesting that an employee obtain other employment because things are not working out, *Queen v. City of Bowling Green*, 956 F.3d 893, 896, 903–04 (6th Cir. 2020).  Even something as seemingly trivial as a supervisor's failure to invite an employee to lunch could "deter a reasonable employee from complaining about discrimination" in certain circumstances.  *See Burlington N.*, 548 U.S. at 69, 126 S. Ct. at 2415–16.

Here, Plaintiff filed her gender discrimination complaint in June 2013.  *Davis II*, 854 F. App'x at 708.  Shortly thereafter, Lynch informed Plaintiff that she might not last in the department until she was eligible to retire; questioned Plaintiff's loyalty for accusing him of discrimination; excluded Plaintiff (and only her) from his open-door policy; and stopped meeting with Plaintiff alone at their bi-weekly meetings.  *Id.*  A reasonable employee might think twice about pursuing a discrimination complaint if her supervisor—who also happens to be the target of the complaint—then informs the employee that she might not remain with the department. *See Queen*, 956 F.3d at 904 (suggestion that the plaintiff "'should get employment elsewhere' because 'things [were] not working out'" amounted to an adverse employment action).  A reasonable employee whose loyalty is questioned in front of her peers (again, by the target of her discrimination charge) might be similarly dissuaded.  As for the different treatment vis-à-vis Lynch's open-door policy, a reasonable worker in Plaintiff's position might construe this treatment as an attempt to isolate her in the workplace, which could also constitute an adverse action.  *See Davis II*, 854 F. App'x at 717.  And Lynch's decision to meet with Plaintiff only with somebody else present could be reasonably interpreted as an indictment of her honesty, as such a "witness" arguably would be necessary only if Plaintiff could not be trusted to accurately recount the proceedings of her meetings with Lynch.

16

Then, a few months later, Lynch gave Plaintiff the lowest performance evaluation scores she had ever received in more than three decades. *Id.* at 707–08. Such an unexpected evaluation might make a reasonable worker wonder whether her discrimination complaint had something to do with the scores. *Cf. Halfacre v. Home Depot, U.S.A., Inc.*, 221 F. App'x 424, 432–33 (6th Cir. 2007) (suggesting that a significant change in performance evaluations after the filing of a discrimination charge might constitute an adverse employment action in certain circumstances). This is especially true because Lynch's subsequent decision to give Plaintiff higher scores for the same evaluation, *see Davis I*, 2020 WL 1915247, at *2, could be seen as calling into question the legitimacy of the original scores.

Lynch's actions in April 2016 and January 2017 also could be seen as contributing to an environment that might dissuade a reasonable worker from pursuing a discrimination claim. Lynch's refusal to talk to Plaintiff anymore except in group meetings, *Davis II*, 854 F. App'x at 710, like his earlier exclusion of Plaintiff from his open-door policy, could be seen as an attempt to isolate Plaintiff in the workplace. The Sixth Circuit in *Davis II* also already indicated that making Plaintiff report to Odom—a peer who held a "functionally similar position[] within the department" as Plaintiff—could amount to an adverse employment action. *Id.* at 715. If this act alone could dissuade a reasonable worker from pursuing a discrimination claim, it likewise could contribute to a broader workplace environment that dissuades a reasonable worker from doing so. The same goes for the January 2017 transfer of Plaintiff's assistant, which the court in *Davis II* also suggested was an adverse employment action intended to isolate Plaintiff in the workplace. *Id.* at 717.

Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that the cumulative effect of all these actions subjected Plaintiff to a workplace

17

environment that might dissuade a reasonable worker from pursuing a charge of discrimination. *See, e.g.*, *Henry*, 651 F. App'x at 505 (a low performance evaluation, increased scrutiny, a letter threatening further action if the employee's performance did not improve, and keeping the employee on the training line were actions that could be found to "dissuade a reasonable worker from making or supporting a charge of discrimination").

The authorities relied upon by Defendant do not compel a different conclusion. Defendant's opening brief urges us to follow the reasoning of two out-of-circuit district court decisions, but neither decision shows that summary judgment is appropriate under Sixth Circuit precedent. (*See* Mem. at 16, 18 (citing *Taylor v. Bd. of Regents for the Univ. of Neb.*, 8:19-CV-19, 2021 WL 3418978 (D. Neb. Aug. 5, 2021) and *Lawson v. Potter*, No. 08-CV-04052-JAR-KGS, 2010 WL 11564954 (D. Kan. Mar. 3, 2010)).)[6] In finding that the plaintiff could not "demonstrate an adverse employment action based on a hostile work environment serving as retaliation," *Taylor* described the Eighth Circuit's standard for showing an adverse employment action as "demanding" and requiring severe or pervasive harassment. 2021 WL 3418978, at *7–8. This standard, however, is at odds with the standard we must apply on remand. *See Davis II*, 854 F. App'x at 718 (finding that we "employed a standard too stringent" in *Davis I* when we asked whether Defendant's conduct was "severe or pervasive enough to create a hostile work environment"); (Mem. at 2, 12 & n.6 (recognizing that *Davis II* does not require the harassment to be severe and pervasive).) The standard for demonstrating an adverse employment action in the Sixth Circuit also is not "demanding"; it is a "relatively low bar" that is "not onerous." *Michael*, 496 F.3d at 596; *Henry*, 651 F. App'x at 504. The court in *Lawson* similarly applied a

---

[6] Defendant misrepresents *Taylor* and *Lawson* as decisions from the Eighth and Tenth Circuits, respectively. (Mem. at 15–16.)

standard that appears to require more than the Sixth Circuit; it required the harassment to be "abusive" or to adversely affect the plaintiff's work environment. 2010 WL 11564954, at *16–17. Accordingly, *Taylor* and *Lawson* do not shed light on how a district court bound by Sixth Circuit precedent should rule on Defendant's motion.

Defendant cites cases from the Sixth Circuit and district courts within the Sixth Circuit in its reply, but Defendant contends only that these cases show that Defendant's post-March 31, 2016 actions would not dissuade a reasonable worker from making a charge of discrimination. (*See* Reply at 2–3.) Again, this is not the relevant inquiry. We must ask whether a reasonable jury could find that the cumulative effect of all of Defendant's actions—pre- and post-March 31, 2016—would dissuade a reasonable worker from making a charge of discrimination. And Defendant does not explain how the cases it cites in its reply require us to answer *this* question in the negative.

\*       \*       \*

In sum, summary judgment is not appropriate on the question of whether Defendant's actions subjected Plaintiff to an adverse employment action.

## II.    *McDonnell Douglas* Factor Four – Causation

Because a reasonable jury could find that Defendant's actions subjected Plaintiff to a work environment that might have dissuaded a reasonable worker from pursuing a charge of discrimination, we proceed to the fourth and final *McDonnell Douglas* factor, causation. The Sixth Circuit did not address this factor with respect to Plaintiff's retaliatory harassment claim. *See Davis II*, 854 F. App'x at 717–19. But the court had already found that our analysis of the third *McDonnell Douglas* factor required remand, *id.*, so it was not necessary for the court to also address causation. Furthermore, although *Davis II* did not expressly instruct us to address causation on remand, causation is required to prove a retaliation claim. *E.g.*, *Redlin v. Grosse*

19

*Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613–14 (6th Cir. 2019). We therefore believe the Sixth Circuit intended for us to address causation if we found that a genuine issue of fact existed regarding an adverse employment action, which we have. *See Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 549 (6th Cir. 2004) (on remand, a "trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces" (quotation marks omitted)).

According to Defendant, Plaintiff cannot prove causation because her June 2013 gender discrimination complaint was not the "but for" cause of any of the actions that occurred after March 31, 2016. (Mem. at 14–15, 18). But the adverse employment action we are considering is the work environment created by the cumulative effect of several actions. *See Davis II*, 854 F. App'x at 718–19. Thus, the causation inquiry asks whether this work environment was caused by Plaintiff's June 2013 gender discrimination complaint, not whether any discrete act carried out after March 31, 2016, was caused by the complaint. As already discussed, a reasonable jury could conclude that Plaintiff was subjected to an adverse work environment from June 2013, shortly after she filed her discrimination complaint, until January 2017, when her long-time assistant was transferred without notice or explanation. The relevant question is whether a reasonable jury could conclude that the June 2013 gender discrimination complaint caused this work environment.

We believe it could. "A causal connection between an employer's actions and a protected activity" can be established if "the adverse action was taken shortly after the plaintiff's exercise of protected rights." *Id.* at 714. "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for purposes of

satisfying a prima facie case of retaliation." *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020) (quotation marks omitted). The allegedly hostile work environment here began shortly after Plaintiff filed her gender discrimination complaint, with Lynch threatening Plaintiff's job, challenging Plaintiff's loyalty in front of her peers, excluding Plaintiff from his open-door policy, and refusing to meet with Plaintiff alone. *See Davis II*, 854 F. App'x at 708. Defendant does not contend that Lynch carried out these actions while being unaware of Plaintiff's gender discrimination complaint, and although the precise dates on which these actions took place is not clear from the record, Defendant also does not dispute that these actions occurred within days or weeks after Lynch learned of the discrimination complaint. The Sixth Circuit has found that comparable (and even longer) temporal proximities are sufficient to establish causation. *See, e.g.*, *George*, 966 F.3d at 460 (causation is often shown by temporal proximity when the adverse employment action is "taken just days or weeks from when the employer learns of the employee's protected activity"); *Wyatt*, 999 F.3d at 424–25 (passage of three months "establishe[d] evidence of causation"); *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 664 (6th Cir. 2020) (recognizing that the Sixth Circuit has "denied summary judgment where a defendant took adverse action against a plaintiff just a few months after learning of his or her protected activity"); *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 766–67, 775–77 (6th Cir. 2018) (approximate two-month gap between protected activity and the first in a series of adverse employment actions was "sufficient temporal proximity to establish a causal connection" at summary judgment). Summary judgment on the issue of causation is not warranted either.

## III. Arguments Improperly Raised on Remand

As a final matter, we have not considered certain arguments the parties made in their summary judgment briefing because these arguments are not properly before us on remand. A

party that does not make an argument on appeal cannot later raise that argument on remand. *See JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529, 532–33 (6th Cir. 2008) (the plaintiff's failure to challenge the district court's lost profits award on appeal "waived any right to relitigate the issue in the retrial for damages"); *United States v. Adesida*, 129 F.3d 846, 849–50 (6th Cir. 1997) (the defendant's failure to raise certain issues in his prior appeal "waived his right to raise these issues before the district court on remand"); *see also United States v. Husband*, 312 F.3d 247, 250 (7th Cir. 2002) (identifying, as a major limitation on the scope of a remand, the fact that "any issue that could have been but was not raised on appeal is waived and thus not remanded"). Defendant argues on remand that the entirety of Plaintiff's retaliatory harassment claim is time-barred. (Mem. at 2, 13–15.) But Defendant did not make this argument in briefing Plaintiff's appeal from *Davis I*. (Appellee's Brief (Appellate Case No. 20-5526, Dkt. No. 20) at 15, 31–36 (arguing that Plaintiff's retaliatory harassment claim failed because the complained-of conduct did not constitute "the type of severe and pervasive harassment that can be said to have altered the terms and conditions of her employment").) Similarly, although Plaintiff now contends that she engaged in a protected activity when she filed her EEOC charge in January 2017 (Opp'n at 18, 23), nowhere in her appellate briefing did she suggest that this action constituted a protected activity under the first *McDonnell Douglas* factor. (*See generally* Appellant's Brief (Appellate Case No. 20-5526, Dkt. No. 17); Appellant's Reply (Appellate Case No. 20-5526, Dkt. No. 25).) By failing to raise these arguments on appeal, the parties waived their right to pursue them on remand.

What is more, under the mandate rule, a district court addressing a case on remand is bound "to the scope of the remand issued by the court of appeals" and cannot "expand its inquiry beyond the matters forming the basis of the appellate court's remand." *Monroe v. FTS USA,*

*LLC*, 17 F.4th 664, 669 (6th Cir. 2021) (quotation marks omitted). The basis for the Sixth Circuit's remand was our failure in *Davis I* to look beyond the terms and conditions of Plaintiff's employment and our failure to assess whether the cumulative effect of the actions at issue would dissuade a reasonable worker from making a charge of discrimination. *Davis II*, 854 F. App'x at 718–19. It had nothing to do with the timeliness of Plaintiff's retaliatory harassment claim or the possibility that Plaintiff's EEOC filing constituted a protected activity. The Sixth Circuit also remanded the case for a particular purpose: so we could "determine whether the conduct of Plaintiff's employer, in a cumulative assessment, would have dissuaded a reasonable employee from making a charge of discrimination." *Id.* at 719. We do not interpret this specific instruction as authorizing us to consider whether Plaintiff's retaliatory harassment claim is time-barred or whether this claim can be based on a protected activity other than Plaintiff's June 2013 gender discrimination complaint. *See, e.g.*, *Monroe*, 17 F.4th at 669–71 (prior opinion that remanded the case "for recalculation of damages consistent with this opinion" did not authorize the district court on remand to address judicial estoppel and sufficiency of the evidence arguments); *McMurtry v. Paul Revere Life Ins. Co.*, 67 F. App'x 290, 295–96 (6th Cir. 2003) (prior opinion that remanded the case "for a redetermination of the attorney-fees question in a manner consistent with this opinion" did not authorize the district court to consider on remand the plaintiff's unrelated estoppel argument). Defendant's timeliness argument and Plaintiff's contention about her EEOC complaint are beyond the scope of *Davis II*'s remand as well.

23

**CONCLUSION**

For the foregoing reasons, Defendant's renewed motion for summary judgment (Dkt. No. 86) is denied. The Court will issue a separate order with instructions for the parties with respect to preparing this case for trial. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: March 22, 2022