**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| SARA SHEA "SALLY" DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:17-CV-00773 |
| v. | ) | |
| | ) | Judge Marvin E. Aspen |
| METROPOLITAN GOVERNMENT OF | ) | |
| NASHVILLE AND DAVIDSON COUNTY, | ) | |
| TENNESSEE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff, Sara Shea "Sally" Davis, alleges in her remaining claim that she experienced a hostile environment at her former employer, Defendant Metropolitan Government of Nashville and Davidson County, Tennessee, in retaliation for having made a sex-discrimination complaint to Defendant's human-resources department, in violation of Title VII of the Civil Rights Act and the Tennessee Human Rights Act. Before us are the parties' motions in limine and other disputed pretrial materials. This opinion sets forth decisions on these matters in preparation for trial.

**LEGAL STANDARDS**

We have broad discretion, pursuant to our "inherent authority to manage the course of trials," in ruling on questions presented in motions in limine. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see also Corbin v. Steak 'n Shake, Inc.*, 861 F. App'x 639, 644 (6th Cir. 2021). "The Federal Rules of Evidence, the Federal Rules of . . . Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures—including motions in limine—in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d

966, 970 (6th Cir. 1999). "Evidence should be excluded on a motion in limine only if it is clearly inadmissible," and if the court is unable to determine whether certain evidence meets this standard, it should defer ruling until trial "so that questions of foundation, relevancy, and potential prejudice can be evaluated in proper context." *Williams v. Tech. for Energy Corp.*, No. 3:12-CV-423-TAV-HBG, 2013 WL 6181816, at *1 (E.D. Tenn. Nov. 25, 2013) (internal punctuation and citation omitted). Our pretrial rulings are "subject to change when the case unfolds," so we may revisit our preliminary evidentiary determinations as appropriate at trial. *See Luce*, 469 U.S. at 41-42; *see also United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

## ANALYSIS

### A.    Plaintiff's Motion in Limine

The parties' Joint Statement of the Case, set out in their Proposed Joint Pretrial Order, includes a brief summary of the claim and defenses. Included in the summary of the defenses is the statement that Defendant "asserts that [Plaintiff's] claims are barred by the applicable statute of limitations." (Dkt. No. 116 at 2.) Plaintiff filed a single motion in limine, seeking to exclude evidence or argument regarding the statute of limitations. Plaintiff contends that this issue "has already been decided by the Court," (Dkt. No. 135 at 1), citing our post-remand order denying Defendant's motion for summary judgment, in which we stated as follows in pertinent part:

> As a final matter, we have not considered certain arguments the parties made in their summary judgment briefing because these arguments are not properly before us on remand. A party that does not make an argument on appeal cannot later raise that argument on remand. *See JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529, 532-33 (6th Cir. 2008) (the plaintiff's failure to challenge the district court's lost profits award on appeal "waived any right to relitigate the issue in the retrial for damages"); *United States v. Adesida*, 129 F.3d 846, 849-50 (6th Cir. 1997) (the defendant's failure to raise certain issues in his prior appeal "waived his right to raise these issues before the district court on remand"); *see also United States v. Husband*, 312 F.3d 247, 250 (7th Cir. 2002) (identifying, as a major limitation on the scope of a remand, the fact that "any issue that could have been but was not raised on appeal is waived and thus not remanded"). Defendant argues

on remand that the entirety of Plaintiff's retaliatory harassment claim is time-barred. But Defendant did not make this argument in briefing Plaintiff's appeal from [our summary judgment ruling]. . . . By failing to raise th[is] argument[] on appeal, [Defendant] waived [its] right to pursue [it] on remand.

What is more, under the mandate rule, a district court addressing a case on remand is bound "to the scope of the remand issued by the court of appeals" and cannot "expand its inquiry beyond the matters forming the basis of the appellate court's remand." *Monroe v. FTS USA, LLC*, 17 F.4th 664, 669 (6th Cir. 2021) (quotation marks omitted). The basis for the Sixth Circuit's remand was our failure . . . to look beyond the terms and conditions of Plaintiff's employment and our failure to assess whether the cumulative effect of the actions at issue would dissuade a reasonable worker from making a charge of discrimination. It had nothing to do with the timeliness of Plaintiff's retaliatory harassment claim . . . . The Sixth Circuit also remanded the case for a particular purpose: so we could "determine whether the conduct of Plaintiff's employer, in a cumulative assessment, would have dissuaded a reasonable employee from making a charge of discrimination." We do not interpret this specific instruction as authorizing us to consider whether Plaintiff's retaliatory harassment claim is time-barred . . . . *See, e.g., Monroe*, 17 F.4th at 669-71 (prior opinion that remanded the case "for recalculation of damages consistent with this opinion" did not authorize the district court on remand to address judicial estoppel and sufficiency of the evidence arguments); *McMurtry v. Paul Revere Life Ins. Co.*, 67 F. App'x 290, 295-96 (6th Cir. 2003) (prior opinion that remanded the case "for a redetermination of the attorney-fees question in a manner consistent with this opinion" did not authorize the district court to consider on remand the plaintiff's unrelated estoppel argument). Defendant's timeliness argument . . . [is] beyond the scope of [the Sixth Circuit's] remand as well.

*Davis v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:17-CV-00773, 2022 WL 860436, at *10-11 (M.D. Tenn. Mar. 22, 2022) (some citations omitted).

In response to Plaintiff's motion, Defendant asserts that our ruling did not "operate to exclude Metro from asserting a statute of limitations defense at trial" and that Plaintiff interprets it too broadly. (Dkt. No. 141 at 2.) But that assertion ignores our express holding that Defendant waived its right to pursue a limitations defense on remand by failing to raise it on appeal. Plaintiff's motion in limine is therefore granted.

**B.** **Defendant's Motions in Limine**

Defendant brings eight motions in limine, all of which are opposed.

**1.** **Defendant's Motion in Limine 1**

Defendant seeks to exclude evidence of and references to "certain pornographic and racially inappropriate materials" that were found in spring 2017 in the briefcase of one of Plaintiff's coworkers, John Holmes. (Dkt. No. 122 at 1-2.) Defendant's primary argument is that this evidence is irrelevant because the items were found a month or two after the retirement of Tommy Lynch, the sole supervisor who Plaintiff alleges subjected her to retaliatory harassment amounting to a hostile workplace, so Holmes was disciplined by a different supervisor, Monique Odom. (*Id.* at 2-3.)

Plaintiff does not dispute the timing of these events or the fact that Odom, and not Lynch, disciplined Holmes, but she nonetheless asserts that evidence of the briefcase's contents and the fact that Holmes was "merely given a reprimand," which was "not even close to the level of retaliatory harassing conduct Plaintiff endured," will "help[] to prove Plaintiff's case." (Dkt. No. 146 at 3-4.) We are unpersuaded. To prove her claim, Plaintiff will have to show that a supervisor subjected her to severe or pervasive retaliatory harassment that was causally related to her June 2013 sex-discrimination complaint. *See Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 841 (6th Cir.), *cert. denied*, No. 23-1238, 2024 WL 3089575 (U.S. June 24, 2024); *Davis*, 2022 WL 860436, at *4. The allegedly harassing actions at issue here were those of Lynch, who retired prior to the time of the briefcase events. Plaintiff does not explain which element of her claim would be supported by the briefcase evidence, and its relevance is not apparent to the Court. Accordingly, we grant Defendant's motion in limine 1.

2. **Defendant's Motions in Limine 2 and 4**

In its motion in limine 2, Defendant seeks to bar from trial references to "any claim of constructive discharge." (Dkt. No. 123 at 1.) Defendant argues that since Plaintiff has made no claim of constructive discharge and "admits that she voluntarily retired from her position," any assertion to the contrary should be excluded as "irrelevant, misleading, and improper." (*Id.*) Defendant adds: "And because Plaintiff has not alleged that she was constructively discharged, any alleged economic or emotional distress damages resulting from her voluntary retirement should be barred from trial as well." (*Id.* at 3.)

Plaintiff contends in response that she should be "allowed to present evidence supporting her claim[] of retaliatory harassment which, here, includes her early retirement," and she refers to her "forced early resignation." (Dkt. No. 147 at 1-2.) Plaintiff also "disputes that she is ineligible for lost wages in connection with her early retirement" and contends that even if she "had to show a higher bar for back pay, that the retaliatory harassment created an intolerable work environment justifying early retirement, which standard Plaintiff asserts is <u>not</u> required for the jury to consider evidence of what monies would or could 'restore' Plaintiff to a financial position she would have been in were it not for the retaliatory harassment, Plaintiff should still be allowed to present the very relevant evidence of her early retirement due in part to the retaliatory harassment she suffered." (*Id.* at 2.)

In reply, Defendant asserts that "arguments and evidence of constructive discharge" are inappropriate because there is no constructive-discharge claim here, and Plaintiff should be "prohibited from back dooring" such a claim. (Dkt. No. 159 at 1-2.) Defendant points out that Plaintiff filed her complaint with the Equal Employment Opportunity Commission in January 2017 and identified the discrimination as having occurred from March 2016 to January 2017; she filed

the complaint in the instant case in April 2017; she retired in July 2017; and she never amended the complaint here or filed a subsequent EEOC complaint.  (*Id.* at 1.)  Defendant also points out that the Sixth Circuit observed in its opinion in this matter that "Plaintiff does not argue she was constructively discharged from her job; rather, she argues that her Director retaliated against her for her sex discrimination complaint and then created a hostile work environment." (*Id.* at 2 (citing *Davis v. Metro Parks & Recreation Dep't*, 854 F. App'x 707, 713 (6th Cir. 2021)).)

Back pay includes "the wages or salary that an employee should have received but did not because of an employer's unlawful action[.]"  *Howe v. City of Akron*, 801 F.3d 718, 730 n.3 (6th Cir. 2015) (brackets omitted).  In order for an employee to recover back pay or front pay beyond the date of her retirement or resignation, "the evidence must establish that the employer constructively discharged the employee."  *Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 767 (6th Cir. 2008) (internal punctuation omitted) (addressing a Michigan state statute that mirrors Title VII and citing *Jurgens v. EEOC*, 903 F.2d 386, 389 (5th Cir. 1990)); *Booker v. Syngenta Crop Prot., LLC*, No. 2:14-cv-02604-JPM-dkv, 2015 WL 5883512, at *10 (W.D. Tenn. Oct. 8, 2015) (holding that plaintiff could not recover back pay or front pay where there was no constructive discharge); *Targonski v. City of Oak Ridge*, 921 F. Supp. 2d 820, 826-27 (E.D. Tenn. 2013) (granting defendant's motion in limine to bar reference to back pay and front pay where plaintiff no longer had a constructive-discharge claim).  "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that [her] 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign."  *Green v. Brennan*, 578 U.S. 547, 555 (2016) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)).  "[C]onstructive discharge is a claim distinct from the underlying discriminatory act."  *Id.* at 559 (citing *Suders*, 542 U.S. at 149).

Plaintiff has not asserted a constructive-discharge claim in this matter, nor can such a claim be inferred from her allegations; indeed, she filed her complaint prior to leaving her employment with Defendant and never sought amendment. Her contention that her retaliatory-harassment claim "includes" her early retirement gets it backwards; as the Supreme Court stated in *Green*, "a hostile-work-environment claim is a 'lesser included component' of the '*graver* claim of hostile-environment constructive discharge.'" *Id.* (quoting *Suders*, 542 U.S. at 149). Furthermore, Plaintiff fails to develop her assertions with legal analysis or citation to authority and therefore waives the issue. *See Puskas v. Delaware Cnty.*, 56 F.4th 1088, 1099 n.2 (6th Cir. 2023) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (internal punctuation and citation omitted). Defendant's motion in limine 2 is therefore granted. Plaintiff will not be permitted to testify or present evidence that she was constructively discharged or "forced" to resign or that her retirement was involuntary. *See Targonski*, 921 F. Supp. 2d at 827.

Defendant's motion in limine 4 is related to its motion in limine 2. Defendant moves to exclude from trial any evidence or argument regarding Plaintiff's entitlement to front pay or back pay on the ground that any such awards are foreclosed by Plaintiff's voluntary retirement and subsequent removal from the workforce. (Dkt. No. 125 at 1-4.) Here, Plaintiff again relies on a theory of constructive discharge. (Dkt. No. 149 at 1-2.) In reply, Defendant argues that "Plaintiff cannot recast her retaliatory hostile work environment claim into a constructive discharge claim at the eleventh hour." (Dkt. No. 161 at 1.) We agree. A plaintiff who voluntarily resigns is not entitled to front pay or back pay beyond the date of her resignation, as discussed above. *Booker*, 2015 WL 5883512, at *10 (citing *Lulaj*, 512 F.3d at 767). And as for the period of time prior to Plaintiff's resignation, while Plaintiff asserts that Title VII contains "no limitations on backpay

7

damages should the Court find that the Defendant has intentionally engaged in . . . an unlawful employment practice," (Dkt. No. 149 at 2 (internal punctuation omitted)), Plaintiff fails to develop this argument by connecting the unlawful practice on which her claim is based—retaliatory harassment—to any plausible theory of lost wages. Defendant's motion in limine 4 is granted.

### 3.    Defendant's Motion in Limine 3

Next, Defendant asks us to prohibit (1) "any of Plaintiff's treating physicians identified in her initial disclosures from providing expert testimony at trial" and (2) Plaintiff "from offering her own lay opinion testimony concerning causation." (Dkt. No. 124 at 1.) As to the former request, Defendant argues that "Plaintiff did not properly disclose her treating physician pursuant to Federal Rule of Civil Procedure 26" in that while she disclosed Dr. Rose Payne, a treating physician who may testify as to Plaintiff's mental health and treatment resulting from work-related stress, she failed to include in her disclosure (or supplement her disclosure with) a summary of the facts and opinions to which Dr. Payne is expected to testify, as required by Rule 26(a)(2)(C)(ii). (*Id.* at 1, 3; Dkt. No. 124-1 at 1.) Defendant further argues that under Rule 37(c)(1), Plaintiff should be precluded from using Dr. Payne as a witness because the summary of Dr. Payne's facts and opinions was not provided at least 90 days before the case was to be ready for trial, as required by Rule 26(a)(2)(D)(i), and the failure to disclose properly was not substantially justified or harmless. (*Id.* at 3-5.) Plaintiff offers several responses: she has not yet determined whether she will call Dr. Payne to testify at trial, and Defendant's motion would be moot if Plaintiff decides not to call her; Plaintiff's description was sufficient, or was "harmless error" because the February 2023 pretrial status conference, not the deadline for the parties' final pretrial materials, was the correct "trial-ready" date from which to count back 90 days; and Defendant waived any objection to the

adequacy of the disclosure by failing to previously file a Rule 37 motion or take Dr. Payne's deposition during discovery. (Dkt. No. 148 at 1-2.)

Plaintiff's disclosure falls short of satisfying Rule 26(a)(2)(C)(ii) because it tells Defendant nothing about the opinions Dr. Payne will offer or the facts on which she will base those opinions. Plaintiff cites no authority for the proposition that Defendant waived the issue by failing to file a Rule 37 motion or take Dr. Payne's deposition. And it matters not whether Plaintiff has not yet decided whether she will call Dr. Payne at trial. When a party does not comply with the expert-disclosure requirements of Rule 26, the party is not allowed to use the expert at trial, unless the failure was substantially justified or is harmless. *Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 567 (6th Cir. 2016) (citing Fed. R. Civ. P. 37(c)(1)).

Plaintiff does not contend that her failure to properly disclose Dr. Payne was substantially justified, and her argument that it was harmless flows from the incorrect premise that the date we set for the case to be ready for trial under Rule 26(a)(2)(D)(i) was the February 2023 pretrial status conference date rather than the deadline for the parties' pretrial replies. (Dkt. No. 145.) Nevertheless, Plaintiff's failure to properly disclose Dr. Payne is harmless. The factors we use to assess whether a failure to comply with Rule 26(a) is harmless are "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for [her] failure to disclose the evidence." *Howe*, 801 F.3d at 747-48 (citation omitted). Although Plaintiff does not explain her failure to provide the required summary, the remaining factors indicate harmlessness. The testimony could be important for Plaintiff. The thrust of Defendant's complaint is that it was provided no advance notice of Dr. Payne's opinions and was unable to weigh whether to take additional discovery in

that regard.  (Dkt. No. 124 at 4.)  But any surprise to Defendant can be cured by Plaintiff's prompt disclosure of the required summary and the limited reopening of discovery for the purpose of Defendant's deposing Dr. Payne, if it so wishes.  Allowing this limited discovery would not disrupt the trial because no trial date is currently set.  Accordingly, we will not prohibit Dr. Payne from providing expert testimony at trial.

Defendant also moves to exclude Plaintiff's "own lay opinion" testimony as to the cause of her emotional or mental-health issues "because any such opinion would not be based on her own perception but would necessarily require her to use" scientific, technical, or other specialized knowledge.  (Dkt. No. 124 at 5.)  It is "well settled," however, that "Title VII plaintiffs can prove emotional injury by testimony without medical support."  *Turic v. Holland Hosp., Inc.*, 85 F.3d 1211, 1215 (6th Cir. 1996); *West v. Tyson Foods, Inc.*, 374 F. App'x 624, 642 (6th Cir. 2010); *Varlesi v. Wayne State Univ.*, No. 10-14793, 2012 WL 12929823, at *2 (E.D. Mich. Nov. 14, 2012).  Plaintiff may use her own testimony about the mental or physical feelings or symptoms she experienced to demonstrate that the Defendant's actions caused her emotional distress; such testimony would be based not on scientific knowledge but on personal knowledge and perception.

Defendant's motion in limine 3 is denied.

### 4.     Defendant's Motion in Limine 5

Defendant moves to bar testimony or argument regarding evidence of alleged damages arising from two events that occurred prior to the sex-discrimination complaint that Plaintiff filed in June 2013: (1) Lynch's decision to hold open until 2013 the position of Assistant Director for Special Services instead of hiring Plaintiff for the position, to which Plaintiff attributes $70,000.00 in lost wages; and (2) Defendant's having paid Plaintiff "as a Golf Course Manager" for two and a half years beginning in 1996 when she was actually a "Facilities Manager," to which Plaintiff

attributes $20,000.00 in lost wages as well as a reduced pension. (Dkt. No. 126 at 1-4; Dkt. No. 126-1 at 2-3.) Defendant contends that damages that allegedly arose from events that took place before Plaintiff's protected activity are irrelevant to Plaintiff's claim for a retaliatory work environment. (*Id.* at 2-5.)

In response, Plaintiff appears to concede that she cannot recover damages in connection with these events but argues that evidence of the events themselves is admissible as relevant background for her claim. She states that she objects to the motion "in so far as Defendant is seeking to limit testimony on the circumstances of Plaintiff's workplace-related and employment related retaliatory acts and harm" because they are "an accurate part of the work conditions/environment that Plaintiff experienced" but presents no argument that the events can serve as bases for damages. (Dkt. No. 150 at 1-3.) Accordingly, we grant Defendant's motion in limine 5. Plaintiff will be permitted to present evidence of Lynch's decision to hold open the Special Services position as relevant background for the eventual filing of her discrimination complaint and ensuing alleged retaliatory harassment, but she will not be permitted to present evidence of or testify about any alleged damages resulting from that action. We also will not permit Plaintiff to present evidence of or testify about the alleged two-and-a-half-year pay disparity that began in 1996. Lynch did not become Director of Defendant's Parks Department until 2011, and the pay disparity that allegedly arose in the 1990s is far too attenuated in time to be relevant to the retaliatory harassment that Plaintiff allegedly experienced in the 2010s.

### 5. Defendant's Motion in Limine 6

Plaintiff testified at her deposition about various remarks allegedly made to her. Defendant asks us to bar as inadmissible hearsay six such remarks:

1.  "[Rick Taylor] said that . . . more or less that I was the person that nobody—I mean, so that you . . . wouldn't feel the wrath of Tommy [Lynch], they did not want to be associated with me, other than talking."

2.  "[Rick Taylor] just said that if we're seen . . . if people were seen with me, [Lynch] would retaliate against them, and they knew that."

3.  "And I found out that [Lynch] had been to the park board and just told them a bunch of . . . I don't know. I heard that [Lynch] told them a bunch of lies."

4.  "Rick Taylor told me [that Tommy Lynch had been talking about me behind my back]."

5.  "John [Holmes] told [Bob Benson] that . . . the reason why [Benson] was being transferred was in retaliation to [sic] being associated with me, to having a good working relationship with me."

6.  "[Shain Dennison] came to me and she said, 'your director up there just threatened you' and—[Dennison] told me—she came directly down to my office. She was in his office when he said that, and she said it came out of nowhere. She goes, 'I don't—I was leaving his office, and he just went'—they were meeting about something totally different. And she said that he . . . just said, 'and by the way, you tell your friend down there,' pointing where my office is, 'that I'm ready for her.'"[1]

(Dkt. No. 127 at 3-4 (quoting Dkt. No. 127-1, Deposition of Sara Shea "Sally" Davis ("Davis Dep.") at 20, 20, 27-[28], 44, 58, 184).) While Defendant provides brief context for each statement, it presents only a conclusory argument that the statements are "hearsay for which no exceptions to the hearsay rule apply." (*Id.* at 4.) In response, Plaintiff presents three undeveloped arguments: (1) the statements are "not being offered to prove the truth of the matter, but rather are being offered to prove motive and/or intent"; (2) they are "circumstantial evidence of discriminatory harassment"; and (3) they are admissible as exceptions to the hearsay rule under Federal Rule of Evidence 801(d)(2)(D) because they are offered against Defendant and were made

---

[1] For the sake of clarity, we have inserted internal quotation marks in this statement to delineate what portions of it appear to be alleged direct quotations.

by Defendant's employees while they were employed by Defendant on matters within the scope of the employment relationship.  (Dkt. No. 157 at 1, 3.)

We deny Defendant's motion in limine 6 without prejudice because Defendant's arguments are wholly undeveloped.  Defendant faults Plaintiff for "not even [having] address[ed] the offered statements individually," (Dkt. No. 163 at 2), without having done so itself.  Neither party analyzes Plaintiff's statements with the specificity that is necessary for us to rule in limine.  Nonetheless, we make the following observations.  Whether a statement is circumstantial evidence of any given matter does not bear on whether it constitutes hearsay.  If a statement is hearsay—that is, an out-of-court statement offered to prove the truth of the matter asserted in the statement—it is not admissible unless some exception applies.  *United States v. Lang*, 717 F. App'x 523, 539 (6th Cir. 2017); *United States v. Churn*, 800 F.3d 768, 776 (6th Cir. 2015); Fed. R. Evid. 801, 802.  Exceptions to the hearsay bar include statements describing an event, made immediately after the declarant perceived it; statements relating to a startling event, made while the declarant was under the stress of excitement it caused; and statements of the declarant's then-existing state of mind (including motive or intent) or emotional condition.  Fed. R. Evid. 803(1), (2), (3).  It is noteworthy that the hearsay exception in Rule 803(3) allows only statements of the *declarant's* state of mind or motive, not someone else's.  Furthermore, most of the statements at issue potentially contain double hearsay, which is inadmissible unless both levels of hearsay fall within an exception to the hearsay bar.  *See Tapke v. Brunsman*, 565 F. App'x 430, 436 (6th Cir. 2014); Fed. R. Evid. 805.  Finally, an employee's role within the organization is important for purposes of Rule 801(d)(2)(D), for the rule "is designed to bind the employer where one of its *managerial* employees makes a statement within the scope of the employee's duties as a manager."  *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 750 (6th Cir. 2005) (emphasis added).  Additional information about these

factors, the context of the alleged statements, and their intended use at trial will be needed to properly evaluate them.

### 6. Defendant's Motion in Limine 7

Under Federal Rules of Evidence 602 and 701, Defendant moves to exclude from trial certain testimony by Plaintiff "about which she has no personal knowledge." (Dkt. No. 128 at 1.) Defendant refers to four categories of statements Plaintiff made at her deposition; we will address each in turn.

> 1. "[T]he environment was that if anybody was seen talking to me—it was almost like they were afraid to be seen talking to me or—everybody was kind of looking—you know, if they were standing in my office, they were standing in the hallway looking to see who was coming[.]"

(*Id.* at 3 (citing Dkt. No. 128-1, Davis Dep. at 16).) Defendant says that when Plaintiff was asked which coworkers were afraid to be seen talking to her, she listed several people, but did not identify anyone who specifically told her they were afraid; she stated that "nobody discussed it," but it was "more of a feeling" that she had. (*Id.* (citing Davis Dep. at 19, 24).) Plaintiff opposes Defendant's motion on the ground that she is permitted under Rules 602 and 701 to testify about her personal experiences in her work environment, her opinion based on those experiences, and her rational perceptions during those experiences. (Dkt. No. 152 at 1-2.) In reply, Defendant contends that Plaintiff's statements should be excluded because they are "conclusory claims as to what other people, either individually or collectively, think or feel." (Dkt. No. 164 at 1.)

Under Federal Rule of Evidence 602, a witness may testify to a matter only if there is evidence that the witness has personal knowledge of it. Under Federal Rule of Evidence 701, a non-expert witness's non-scientific opinion testimony is limited to one that is "rationally based on the witness's perception" and helpful to the jury. Testimony about a person's appearance and manner of conduct is a "prototypical example of Rule 701 evidence." *United States v. Gyamfi*,

805 F.3d 668, 672-73 (6th Cir. 2015). We agree with Plaintiff that her statement is admissible because it is based on her own perception of her coworkers' demeanor and mannerisms when they spoke to her in or around her office. Plaintiff's conclusion that it seemed "like they were afraid to be seen talking to [her]" is an opinion based on her own sensory and experiential observations from interactions in which she had personal involvement and is therefore within her personal knowledge. *See id.* (holding that the district court did not abuse its discretion in finding a sufficient personal-knowledge basis for admitting police officers' testimony that the defendant appeared "nervous" due to his demeanor). Defendants' motion in limine 7 is denied as to statement 1.

2.  "[I]t was well-known in the department that [Lynch] was harassing me constantly. And . . . retaliating against me."

    "[M]y peers . . . knew about all . . . the harassment and the retaliation and it was all well-known in the parks department."

(Dkt. No. 128 at 3-4 (citing Davis Dep. at 18, 198).) Defendant argues that Plaintiff "did not testify as to any evidence to support a finding that she has personal knowledge of what everyone in the Metro Parks Department 'knew' about any alleged retaliation or harassment," and she cannot speculate about their knowledge, so she should be precluded from offering these statements at trial. (*Id.* at 3-4.) Plaintiff says that Defendant fails to acknowledge that she will be able to establish through other testimony at trial that these statements are based on her personal knowledge, including "what she was told" at work. (Dkt. No. 152.) Because the admissibility of these statements will depend on what evidence is elicited at trial and whether Plaintiff can show that a hearsay exception or a non-hearsay purpose applies, we are unable to rule in advance of trial. Defendant's motion in limine 7 is denied without prejudice as to the statements in paragraph 2.

3.  "I was assuming--which I think is true, that when [Lynch] told [Dennison] that . . . he was ready for me, he meant that he had preceded me going to the park board."

15

(Dkt. No. 128 at 4 (citing Davis Dep. at 28).) When asked how she knew that Lynch "went to" the Board, Plaintiff replied, "I just heard that he did," and did not recall who had told her that. (Davis Dep. at 28.) Defendant maintains that Plaintiff should be precluded from offering this testimony because she "did not testify as to any evidence to support a finding that she has personal knowledge of what Mr. Lynch meant by his alleged comments, which were not even made to Plaintiff." (Dkt. No. 128 at 4.)

This testimony relates to the conversation between Plaintiff and Dennison, which is discussed above in regard to Defendant's motion in limine 6. The hearsay issues implicated by that conversation must be resolved in the trial context, so Defendant's objection to the above statement must likewise be resolved in the trial context. Defendant's motion in limine 7 is thus denied without prejudice as to statement 3.

4. "I don't know the details to tell you why [Monique Odom] would have reacted like she did, but I would think that it was due to something that Tommy had told her. I'm just speculating."

(Dkt. No. 128 at 4 (citing Davis Dep. at 35).) Here, Plaintiff was discussing a negative interaction with Odom in which Odom allegedly said that Plaintiff had told "all these lies." (Davis Dep. at 35-36.) Defendant contends that this statement should be barred at trial because Plaintiff admitted that her inference was based on speculation. We agree. Because this testimony was not based on personal knowledge, Plaintiff may not offer it. Defendant's motion in limine 7 is granted as to statement 4.

## 7. Defendant's Motion in Limine 8

Defendant moves to exclude from trial any references to "Plaintiff's request for 'equitable and injunctive relief as may be appropriate, including an order that requires Defendants to conduct training concerning the prevention of . . . retaliatory practices . . . , and such other equitable relief

16

as may be appropriate.'" (Dkt. No. 129 at 1.)[2] Defendant asserts that Plaintiff lacks standing to seek injunctive relief because her voluntary retirement negates both redressability and the likelihood of future harm. (*Id.* at 2-3.) In response, Plaintiff merely discusses the general availability of equitable relief under Title VII, without squarely addressing Defendant's contention that such relief is not appropriate given the particular facts and development of this case. (Dkt. No. 153.)

We have already considered the equitable remedies of front and back pay in the context of Defendant's previous motions in limine. As discussed above, Plaintiff has no constructive-discharge claim, so no reference to front or back pay will be permitted at trial. Furthermore, Plaintiff's request for injunctive relief is moot; given that she is no longer employed with Defendant and does not seek to be reinstated or rehired, there is no basis upon which to conclude that she has a need for prospective relief pertaining to Defendant's employment practices. *See Simmons v. Beshear*, No. 22-5404, 2022 WL 17547517, at *3 (6th Cir. Dec. 9, 2022) (citing *Buntin v. Breathitt Cnty. Bd. of Educ.*, 134 F.3d 796, 801 (6th Cir. 1998)) (former employee's request for equitable relief with respect to job conditions was moot because she was no longer employed by defendant), *cert. denied*, 143 S. Ct. 2504 (2023); *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 865 (9th Cir. 2017) ("[A] former employee has no claim for injunctive relief addressing the employment practices of a former employer absent a reasonably certain basis for concluding . . . she has some personal need for prospective relief."). Plaintiff does not suggest that any other form of equitable relief would be appropriate here. Accordingly, Defendant's motion in limine 8 is granted.

---

[2]     Defendant does not provide a citation for this quotation. It appears to be drawn from the section titled "Plaintiff's Position on Damages" in the parties' Proposed Joint Pretrial Order. (Dkt. No. 116 at 7.)

## C.    Remaining Pretrial Matters

Several other pretrial matters are before us.  Plaintiff has filed responses to Defendant's proposed voir dire questions, proposed verdict form, witness list, exhibit list, proposed jury instructions, and deposition designations and counter-designations (Dkt. Nos. 154, 154-1, 154-2, 154-3, 155, 156).  Plaintiff does not object to Defendant's proposed voir dire questions, witness list, or exhibit list.  Defendant has filed objections to Plaintiff's exhibit list, witness list, proposed jury instructions, and deposition designations and counter-designations, (Dkt. Nos. 137, 138, 139, 140), but does not object to Plaintiff's proposed voir dire questions.

The parties have submitted separate proposed verdict forms.  (Dkt. Nos. 119, 134.) Plaintiff states that she is "willing to work with Defendant [] to see if the parties can find any agreement on a Proposed Verdict Form." (Dkt. No. 154-1.)  To our knowledge, Defendant has not filed a response to Plaintiff's proposed verdict form.  Accordingly, the parties are directed to confer in an attempt to reach agreement on a joint proposed verdict form.

Defendant objects to four of Plaintiff's proposed jury instructions and proposes a minor revision to one. (Dkt. No. 139.)  Plaintiff states that she has "set out her objections" to Defendant's proposed instructions in her own proposed instructions.  (Dkt. No. 155 at 1.)  Any such objections, however, are difficult to ascertain from those proposed instructions.  (Dkt. No. 133.)  Plaintiff also states that the parties "have conferred some on this point and are willing to work together to see if they can create joint proposed jury instructions." (Dkt. No. 155 at 1.)  In addition, it appears that our rulings on the parties' motions in limine resolve at least some of the parties' disputes in this regard.  The same is true as to Defendant's objection to Plaintiff's witness list (Dkt. No. 138); Defendant objects to the inclusion of witness Misty Adfield for the reasons stated in its motion in limine 1.  The parties are therefore directed to confer in an attempt to create a set of joint proposed

18

jury instructions as well as to resolve Defendant's objection to the inclusion of Adfield on Plaintiff's witness list.

As for the parties' deposition designations and counter-designations, they appear to be overbroad. For example, Plaintiff has designated portions of her own deposition. (Dkt. No. 116 at 4-5.) Defendant submits that these designations "should be stricken" because Plaintiff is planning to testify at trial. (Dkt. No. 140 at 1.) In addition, Plaintiff states that "it is not known if any witnesses will be unavailable." (Dkt. No. 156 at 1.) We would prefer to resolve as many issues as possible in advance of trial, so the parties must confer and file a single set of narrowed deposition designations and counter-designations—only those that they actually intend to use at trial.

Finally, Defendant has filed a set of lengthy objections to Plaintiff's exhibit list. (Dkt. No. 137.) A common refrain is confusion regarding the specific documents upon which Plaintiff intends to rely. After reviewing Plaintiff's exhibit list, we agree that Plaintiff's exhibit descriptions are impermissibly broad and unspecific; thus, Defendant's request that Plaintiff be directed to "resubmit a streamlined exhibit list," (*id.* at 1 n.1), is granted. For its part, Defendant includes a laundry list of evidentiary objections to many exhibits, with little to no legal analysis; for example, Defendant objects to one declaration on grounds of "relevance, more prejudicial than probative, hearsay, hearsay within hearsay, improper opinion, speculation, and lack of personal knowledge." (*Id.* at 2.) Therefore, after Plaintiff tenders to Defendant a revised exhibit list, the parties shall confer in an effort to narrow the true areas of dispute with respect to Plaintiff's exhibits.

Counsel for the parties must confer in person to make a concerted, good-faith effort to narrow their areas of dispute and discuss each issue with a view to reaching agreement.

## CONCLUSION

For the foregoing reasons, we grant Plaintiff's motion in limine (Dkt. No. 135) and Defendant's motions in limine 1, 2, 4, 5, and 8 (Dkt. Nos. 122, 123, 125, 126, 129). We deny Defendant's motions in limine 3 and 6 (Dkt. Nos. 124, 127). We grant in part and deny in part Defendant's motion in limine 7 (Dkt. No. 128).

Plaintiff shall tender to Defendant a Rule 26(a)(2)(C)(ii) disclosure to Defendant as to Dr. Rose Payne by October 1, 2024. Plaintiff shall file and tender to Defendant a revised exhibit list by October 8, 2024. Counsel shall then meet in person in an attempt to (1) agree on joint proposed jury instructions and a joint proposed verdict form; (2) agree on narrowed deposition designations and counter-designations; (3) agree on narrowed areas of dispute with respect to Plaintiff's exhibits; (4) resolve Defendant's objection to the inclusion of Misty Adfield on Plaintiff's witness list; and (5) discuss the matter of Defendant's deposing Dr. Payne and set a deposition date if Defendant so wishes.

By November 5, 2024, the parties shall file the following: (1) a single set of joint proposed jury instructions with a single joint proposed verdict form; (2) a single revised list of the parties' narrowed deposition designations and counter-designations; (3) revised objections to Plaintiff's exhibit list; (4) a joint statement indicating whether there remains a dispute as to witness Misty Adfield; and (5) a joint statement regarding the matter of any deposition of Dr. Payne. Any remaining objections or disputes shall be clearly set out in the introduction to each document and shall contain references to supporting authority. These filings will assist the Court by precisely framing the remaining disputed pretrial issues. The parties shall also revise their Proposed Joint Pretrial Order to reflect the Court's pretrial rulings (for instance, by amending the Joint Statement of the Nature of the Case to Be Read at Voir Dire to omit any references to constructive-discharge

concepts, lost wages, and the statute of limitations) and file a revised Proposed Joint Pretrial Order by November 5, 2024.

It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Date: September 10, 2024